Loomis and als. *v.* Pingree and als.

# COUNTY OF FRANKLIN.

43  299
90  461

———o———

LEWIS LOOMIS AND ALS. *versus* DAVID PINGREE AND ALS.

It may well be presumed, notwithstanding the form of words as to the attestation, that deeds were in fact delivered on the day they were acknowledged, and in such order of time as to make them effectual to carry out the intention of the parties to them.

A deed conveying the grantor's right, title, interest, and estate; and *excepting* therefrom certain public lots, and two parcels of a given number of acres, each parcel under mortgage to different individuals, should be held to convey the interest of the grantors in the lands mortgaged, and also whatever right they had in the public lots; the exception being only an exception as to all legal incumbrances.

Where one by inheritance may be entitled to a portion of an estate, but had been hopelessly insane for twenty years, and the other heirs covenant that they are solely entitled to represent said part, and that they will warrant and defend the same against all persons claiming under their ancestor, the grantees are entitled to hold the whole estate against all who do not claim under the insane heir.

The possession of one tenant in common is the possession of another, which each has a right to for himself and all others, against strangers having no title.

Where the requirements of the statute are, that the sheriff proceed to sell so much of said land as will discharge said taxes and the reasonable expenses of sale, a sale of the whole tract to the highst bidder is invalid.

Any one interested in lands sold *in solido* for the gross amount due for taxes, could tender payment for all the other cotenants as well as for himself, although entitled to redeem by the Statute of 1849, chap. 125, sec. 4, upon more favorable conditions.

An offer of payment within the time allowed by law, for the purpose of saving a forfeiture, must be regarded for that purpose as equivalent to an actual payment made at the time of the offer, and the money need not be brought into court.

Loomis and als *v.* Pingree and als.

A vendee will not be estopped to set up his title subsequently acquired, unless by doing so he be obliged to deny or contradict some fact alleged in his former conveyance.

REPORTED by RICE, J., sitting at *Nisi Prius.*

This is a real action wherein Lewis Loomis, Ebenezer Gilson and Daniel Lawrence demand against David Pingree, John E. Thayer and Nathaniel Thayer seizin and possession of Township No. 3, 3d Range,. Franklin County.

Defendants plead the general issue and brief statement, claiming title in themselves.

The plaintiffs, to sustain their title, put in a deed of quitclaim :

Henry Davenport and als., heirs of Rufus Davenport, to Lewis Loomis, dated June 4, 1853.

Quitclaim deeds :

Lewis Loomis to Ebenezer Gilson; same to Daniel Lawrence, each dated June 4, 1853, acknowledged and recorded June 29, 1853, conveying one-third undivided of said premises to each.

The defendants then introduced a deed of warranty from Grenville Parker to David Pingree, date March 4, 1851, of one-third of said premises undivided.

Deed of warranty :

Tristram C. Gilman to David Pingree, dated March 3, 1851, of one-third of said premises undivided.

Deed of warranty :

Thomas Wentworth to David Pingree, date February 19, 1851, of one-third of said premises undivided.

The plaintiffs then introduced quitclaim deed :

Edward Blake, Jr., to Rufus Davenport, date October 22, 1806, of 3600 acres of said township.

Quitclaim deed :

John Peck to Rufus Davenport, date December 23, 1806, of fourteen twenty-firsts parts of said premises, say 14,000 acres.

Quitclaim deed :

John Haven and Ladd, executors, to Rufus Davenport, date December 15, 1835, of 3400 acres of said township.

Deed:

Nathaniel Coffin, Land Agent of Mass., to Rufus Davenport, date May 11, 1836, of the interest of the commonwealth, reserving 2000 acres.

(Resolves of Massachusetts, of April 1, 1836, and June 17, 1820, were cited, as in the case.)

Defendants then introduced (subject to objection) warrant of Elias Thomas to W. C. Whitney, sheriff, and return of said Whitney as to state tax of 1828.

Deed:

W. C. Whitney, Sheriff, to John Davis, date July 20, 1829.

Quitclaim deed:

John Davis to Abagail Davis, date December 20, 1834, excepting 100 acres conveyed Luke Brooks.

Quitclaim deed:

Abigail Davis to Jonathan Butterfield, date September 29, 1835, of one-half undivided of No. 3, Range 3.

Quitclaim deed:

John Davis to Jonathan Butterfield, date August 26, 1834, one-half of No. 3, 3d Range, undivided.

Quitclaim deed:

Jonathan Butterfield to Lewis Loomis, date January 25, 1839, No. 3, Range 3, same deeded by Abigail and John Davis.

Quitclaim deed:

Lewis Loomis to Thomas Wentworth, date May 7, 1843, one-half No. 3, Range 3, except 1500 acres from said half.

Quitclaim:

Abigail Davis to Thomas Wentworth, date August 24, 1843.

Quitclaim:

Thomas Wentworth to Grenville Parker, date August 26, 1843, one-sixth undivided, except 1666 acres.

Quitclaim:

Thomas Wentworth to Tristram C. Gilman, date August 26, 1843, one-sixth undivided, except 1666 acres.

Quitclaim:

John Davis to Thomas Wentworth, date August 24, 1843, all interest except deed to Abigail Davis, dated December 20, 1834.

Certified copy of W. C. Whitney, Sheriff's return of advertisement, dated May 23d, 1829.

Deed:

Samuel Corey, Land Agent, to George Pierce and Benjamin Goodrich, date April 30, 1840, No. 3, 3d Range.

Quitclaim:

George Pierce and Benjamin Goodrich to Thomas Wentworth, Grenville Parker and Tristram Gilman, date August 23, 1849.

Quitclaim:

Thomas Wentworth to Grenville Parker, date May 29, 1843, one-third of what was conveyed by Lewis Loomis.

Quitclaim:

Thomas Wentworth to Tristram Gilman, date May 29, 1843, one-third of what was conveyed by Lewis Loomis.

Record of Land Agent relative to his doings in the sale of 1849.

Quitclaim:

David Pingree to John E. Thayer and Nathaniel Thayer, date April 1, 1851, of his interest in No. 3, Range 3.

The plaintiffs then introduced

Numbers of the Portland Advertiser (state paper) of May 26, June 2, June 9, June 16, June 23, June 30, July 7, and July 14, 1829.

Copy of warrant of Treasurer of state to the sheriff of Oxford county, date March 20, 1823, and return of Sheriff on sale of No. 3, Range 3, to Simeon Cummings.

Quitclaim deed:

Simeon Cummings and al. to Thomas L. Parker, Samuel Davis and Sherman Willard, date October 5, 1824, of all their right in said premises.

Quitclaim deed:

Thomas L. Parker to Rufus Davenport, date March 10, 1826, of all right in said township.

Quitclaim deed:

Samuel Davis to Rufus Davenport, date March, 1826.

Quitclaim deed:

John Davis to Sherman Willard, date August 5, 1829, of all interest in said premises.

Copy of Treasurer's notice, published in the state paper (Eastern Argus) in 1828.

Volumes of "The Age," state paper for 1848 and 1849, and "extras" containing advertisements of taxes.

*Cutler & Fuller,* counsel for plaintiffs, argued that

The ancestor of the plaintiff's grantor took the title to No. 3, range 3, subject to the condition made in grants of eastern lands; that of settling thirty families within the township within a limited time. The commonwealth, to avail itself of a forfeiture, had to pass some legislative act. Little v. Watson, 32 Maine R., 214.

By resolve of April 1, 1836, the lands were declared forfeited unless the settling duties were performed or commuted, by the first of June following.

On the 4th of June, 1836, the land agent conveyed the township to Rufus Davenport, ancestor as aforesaid, two thousand acres, mortgaged back to secure the payment of nine hundred dollars, the amount of commutation.

Defendants seek to defeat this title by two tax sales.

I. Sale of Whitney (sheriff of Oxford county,) July 20, This is defective for many reasons.

1. The tax of 1828 was not properly advertised by the state treasurer; the notice contains no statement of the levy of the tax, or the year of assessment; it does not describe the tract intelligibly.

2. The advertisement in the state paper is defective in itself, and was not published "six weeks successively before the time of sale."

The state paper (Advertiser) of the July 14, does not contain the advertisement. See Statute, chap. 183, July 29, 1822. Those who assert the tax title must prove a strict compliance. Smith v. Bodfish, 27 Maine R, 289; Howe v. Russell, 36 Maine R, 115.

Defendants do not show an advertisement of the tax of 1828; they rely on the warrant and return alone.

3. This return is defective. The sheriff " exposed the township for sale," instead of selling " so much of the land as would discharge the taxes and reasonable expenses of sale." He " sold the whole township to the highest bidder."

4. The deed of John Davis to Sherman Willard, of the 5th of August, 1829, was a redemption of the tax title, and Willard had derived color of title, together with Parker and Samuel Davis, at the sale in 1823.

Parker and Samuel Davis conveyed to Rufus Davenport, who held the legal title. Willard and Davenport were co-tenants, and the redemption by Willard inured to the benefit of Davenport. John Davis' subsequent sales were void.

II. Defendants claim title through Pierce and Goodrich, purchasers at the sale of land agent, April 30, 1849.

1. Henry Davenport tendered the amount due to the assignees of Pierce and Goodrich, for himself and the other heirs of Rufus Davenport, co-tenants. Henry was administrator. White v. Mann, 26 Maine R., 361; Oatman v. Walker, 33 Maine R., 67. Statute, chap. 65, 1848, was the law under which the sale was attempted.

2. Defendants rely on the record in the land office alone. This does not state or show all that is necessary to comply with law. It does not show the assessment, advertisement, and year of the tax. The time and place of the treasurer's notice is not given, or when it was due, or that it was due, agreeably to law.

The land agent's return shows that the treasurer returned the list of tracts, &c., the 23d of March, instead of immediately after the first of March. It recites that notice was given—not *public* notice; sale was to pay taxes, *charges* and

interest—not *costs*, &c. So too, the land agent published his notice in the *Extra*—not the Age, (state paper.) James W. Clark v. Hastings Strickland and al. U. S. Circuit Court, Maine, September, 1855.

*R. Goodenow* and *John S. Abbott*, counsel for the defendants, argued that the plaintiffs must prove title to the *whole* of the demanded premises, or judgment must be for the defendants. That the court has no power to permit a discontinuance as to a part. That Loomis obtained no title under his deed of June 4, 1853, certainly not until June 16, when it was delivered, and therefore could convey no title on the same 4th day of June, 1853, to Lawrence and Gilson, and there being no evidence to control or modify, the date of those deeds must be taken as *prima facie* evidence of their execution and delivery on that day. Woodman v. Smith, 37 Maine R., 25.

The date of acknowledgment can be no evidence of time of delivery.

If this deed be valid what was conveyed? The grantors are described as heirs-at-law of Rufus Davenport. Four lots are excepted, and the deed recites that a portion in common and undivided is under mortgage for a sum which does not appear to be paid, and the right of redemption to which did not descend to his heirs, and they could convey no title. Neither have all the heirs conveyed.

The plaintiffs show no title to two-thirtieths of the estate. Had Rufus Davenport any title at his death? The deed of the commonwealth to Edward Blake, of 3600 acres, was conditional, and those conditions were never performed. If they have, the title to the whole township, except the 3600 acres, remains in the commonwealth.

The quitclaim deed from John Peck to Rufus Davenport conveys no title, as there is no evidence that Peck had any title or possession; and this deed is also conditional.

Neither did Davenport acquire title from Haven and Ladd.

The Land Agent of Massachusetts had no authority to

convey, neither had the commonwealth any title which he could convey if his deed to Blake was good. The title is in the defendants, by virtue of a purchase of the Sheriff, Whitney, to John Davis, although it is enough to show it out of the demandants.

Evidence to contradict the sheriff's return is not admissible.

The tax title under which plaintiffs claim is defective.

The defendants also claim under a deed from Samuel Coney, Land Agent, to Pierce and Goodrich, for non-payment of taxes.

If the tender to the grantees of Pierce and Goodrich was effective, it could not impair the title under Whitney.

But the tender by Rufus Davenport, who was tenant in common, owning only one twenty-fourth, could be made for that part only. Laws of Maine, chap. 125, sec. 4.

He has not brought the money into court, and the tender cannot effect a title until reconveyance. 4 Maine R., 116, Wilson v. Wing.

The tender should have been the amount of taxes, interest and charges, and twenty per cent. thereon. Laws of 1849, chap. 125, sec. 4.

Loomis is estopped by the covenants in his deed to Wentworth, to set up a subsequently acquired title. 29 Maine R., 183; 30 Maine R., 537.

GOODENOW, J. This is a plea of land, whereby the plaintiffs, Lewis Loomis, Ebenezer Gilson and Daniel Lawrence, demand of said Pingree, and John E. Thayer, and Nathaniel Thayer, possession of township No. 3, 3d range, in said county of Franklin.

The writ is dated July 7, 1854. The defendants plead the general issue, and by brief statement allege that the title to the demanded premises is in said John E. and Nathaniel Thayer, and deny that the plaintiffs have any title or right in or to the same. And the said Pingree alleges that all the control and occupation of the demanded premises by him

exercised, since 1851, has been under the other defendants, by virtue of their title.

By an act relating to the separation of Maine from Massachusetts, and forming the same into a separate and independent state, passed June 19, 1819, it was provided, that "all rights of action for, or entry into lands, and of actions upon bonds for the breach of the performance of the condition of settling duties, so called, which have accrued or may accrue, shall remain in this commonwealth, to be enforced, commuted, released, or otherwise disposed of, in such manner as this commonwealth may hereafter determine."

On the 4th of June, 1836, the land agent of Massachusetts, agreeably to resolves passed the 17th of June, 1820, and the first of April, 1836, conveyed the township demanded, to Rufus Davenport, ancestor of the plaintiffs' grantors, taking back a mortgage on two thousand acres of the same, to secure the payment of $900, which had been agreed upon, as the amount to be paid by way of commutation, and in lieu of a full performance of the condition in relation to "settling duties." By the original grant and conveyance of this township to Edward Blake, May 15, 1804, the grantee, his heirs and assigns, were required to perform certain "settling duties," and the deed to him from the agent of Massachusetts, was upon this condition.

By the resolve of April 1, 1836, the lands were declared forfeited, unless the settling duties were performed or commuted by the first of January following.

The plaintiffs derive their title from the heirs of Rufus Davenport, by deeds which are in the case, and are particularly noticed in the report, and to which we refer.

In answer to this, the defendants contend, first, that all the demandants must prove title; otherwise all must fail, and that judgment must be for the defendants. And that if Rufus Davenport once owned the land demanded, and is dead, and Henry Davenport and others, who executed the deed, dated June 4, 1843, to Lewis Loomis, were the heirs and only heirs of Rufus, that Loomis acquired no title, *till the*

*deed was delivered,* which was on the 16th of June, 1853, and that his quitclaim deeds of June 4, 1853, to Ebenezer Gilson and Daniel Lawrence conveyed no title. These deeds purport to have been acknowledged on *the* 21*st of June,* 1853; and, *ut res magis valeat quam pereat,* we may well presume, notwithstanding the form of words as to the attestation, that the deeds were in fact delivered on the day they were acknowledged, and in such order of time as to make them effectual to carry out the intentions of the parties to them.

William Richardson, the magistrate who took the acknowledgments, also was a witness to the execution of the deeds by Lewis Loomis only. A different person was a witness to the execution of the deeds by his wife. From this circumstance it may be presumed that they were not executed by both at the same time and place; and that they were not delivered before they were executed by the wife.

William Richardson does not state, in his deposition, that he saw the deeds *delivered.*

Second, it is contended by the defendants, that the deed of these heirs of Rufus Davenport does not purport to convey the whole township, but only their right, title, interest and estate, and excepting therefrom, four lots of three hundred and twenty acres each; and also two thousand acres, under a mortgage from said Rufus to the Commonwealth of Massachusetts; and also three thousand four hundred acres, under a mortgage to John Haven and Alexander Ladd. We are of opinion that the interest of said heirs in the lands mortgaged was conveyed, and also whatever right they had in said four public lots; and that the exception was only an exception as to all legal incumbrances.

Third, it is contended that all the heirs of Rufus Davenport have not joined in said deed, and that therefore the title of the plaintiffs fails to a portion of the premises, if not to the whole.

By the deposition of Henry Davenport, it appears that Rufus, at his decease, left as his heirs, two sisters, Catharine

and Joanna, and four children of Elijah, a deceased brother, all of whom, representing three-sixths of the estate, executed the deed. Also Robert Steele, Samuel Davenport Steele, Warren Parmenter and Priscilla S. Parmenter, wife of said Warren, in her right, being all heirs of Mrs. Patience Steele, formerly Patience Davenport, who was a sister of said Rufus, representing another undivided sixth part, executed the deed. Also Dr. Edward S. Davenport, Enos Ford and Elizabeth, his wife, in her right, Henry G. Fuller and Margaret M., his wife, in her right, and Sophia H. Davenport, being all the heirs of Samuel Davenport, deceased, who was a brother of said Rufus, and as such representing another undivided sixth part of said estate, executed the deed.

An exception is here taken to the power of attorney of Enos Ford, who executed said deed in behalf of Sophia H. Davenport. We are of opinion that the power of attorney is sufficient to confer authority to transfer the interest of Sophia H. in said estate, especially as against all persons who do not claim under her.

Another objection taken is, that Ellen Davenport, who was insane, did not execute the deed. It appears by the deposition of Henry Davenport, that she had been hopelessly insane for the last twenty years. The grantors covenant that they are solely entitled to represent said sixth part of the estate of said Rufus, and that they will warrant and defend the same to the said Loomis, against all persons claiming the same under the said Rufus.

This, in our opinion, entitles the plaintiffs to hold the right of the said Ellen against all who do not claim under her, or by a title paramount.

The same remark will apply to the objection, that Samuel Steele did not execute the deed; and to the objection, that " Sarah" Davis, named in the body of the deed, has signed it by the name of *Sally* Davis, being one of the heirs of Sarah Dunbar, who was a sister of said Rufus Davenport, and whose nine heirs, representing another sixth part of said estate, executed the deed.

Fourth. It is contended that Rufus Davenport had no title to the premises, at the time of his decease, because the settling duties were not performed by Edward Blake, from whom he claims a title to three thousand six hundred acres; Or if they were, that the whole township was conveyed to Blake, and that the title is still in him, except as to the three thousand six hundred acres; and that Rufus Davenport acquired no title by the deed of John Peck to him, because that also was upon the condition, " that said Blake before the first of January, 1801, shall have settled thirty families within said township;" or by the deeds of John Haven and Alexander Ladd, executors, who had no authority to convey the estate of his testator; and that the resolves of Massachusetts did not confer on Coffin, the land agent, authority to convey in the manner he did; or if they did, that the deed was not so drawn and executed as to comply with the authority; or that Massachusetts had no title to said township, the same being in Blake. Until the defendants show some title, either from Massachusetts or from Blake, we do not consider them as presenting themselves in a condition to raise these questions. Conditions may have been waived, or adjustments made, in which strangers have no concern. Smith and al. v. Bodfish, 27 Maine R., 289.

The resolve of April 1, 1836, and the action of the land agent of Massachusetts under it, June 4, 1836, is *prima facie* evidence that an adjustment was made in a manner satisfactory to the state.

It is for those who make the conditions to insist upon their performance.

In their brief statement the defendants deny that the demandants have *any* title; and allege title in themselves. The demandants prove title to a large part of the premises, and an incohate right under a deed of warranty to the shares of other heirs. The defendants do not claim under those heirs. They show no title. The demandants have elected to consider them as disseizors, for the purpose of trying the title; and all the facts in the case show that they

have a better right to have possesion of the premises than the defendants have to hold them. The possession of one tenant in common is the possession of another, and each has a right to possession for himself and all others, as against strangers, having no title.

Fifth. It is contended that the defendants have established title in themselves, under one or two sales for taxes.

1. By a sale by Whitney, sheriff of Oxford county, July 20, 1829. On the part of the plaintiffs, it is alleged that the tax of 1828, by virtue of which this sale was made, was not properly advertised by the state treasurer; that the notice published in the Portland Advertiser, then the state paper, does not state that a tax had been levied, or describe the tract intelligibly; that it was not published six weeks successively before the time of sale, in the state paper; that the paper of July 14, 1829, does not contain the notice or advertisement; and that the sheriff exposed the township for sale, instead of selling "so much of the land as would discharge the taxes and reasonable expenses of sale;" and that "he sold the whole township to the highest bidder."

By statute, January 29, 1822, chap. 183, it was made the duty of the sheriff, upon the receipt of a warrant from the treasurer of the state, "forthwith to proceed to sell so much of said land as will discharge said taxes, and the reasonable expenses of sale," &c.

Without noticing all these objections to the validity of the sale by Whitney, we are of opinion that the one last named is fatal.

2. The defendants claim through Pierce and Goodrich, who were purchasers at the sale of the land agent, April 30, 1849.

The testimony proves that Henry Davenport tendered the amount due to the assignees of Pierce and Goodrich, for himself and the other co-tenants, heirs of Rufus Davenport, within the time allowed by law for redeeming the lands sold. But it is contended that this tender was insufficient to defeat

the title of the defendants, acquired under the deed of the land agent of Maine.

1. Because Henry was heir of only one-twenty-fourth part of the real estate left by Rufus Davenport, and as such he had no authority to tender for the other heirs and co-tenants.

We are of a different opinion. The land was sold, *in solido*, for the gross amount due for taxes, &c. Any one interested could tender payment for all the other co-tenants, as well as for himself, although by the statute of 1849, chap. 125, sec. 4, he was not obliged to do so. This statute gave tenants in common of lands sold for non-payment of taxes, a privilege, which they had not before.

Before this statute, land owned in common by different proprietors, which had been taxed and sold at auction, *in solido*, for the payment of taxes, could be redeemed by any one of the co-tenants; and the purchaser was at liberty to refuse to receive any part, without the whole amount for which he was entitled to hold the land. Watkins and al. v. Eaton and al., 30 Maine R., 529.

2. It is said the money tendered should have been brought into court. This is not an action to recover the money. An offer of payment, within the time allowed by law, for the purpose of saving a forfeiture, must be regarded for this purpose as equivalent to an actual payment made at the time of the offer.

By the deed from the land agent the owner had a right to redeem the land within one year from the time of sale, by paying to the purchaser or assigns, the amount for which the same was sold, with interest thereon at the rate of twenty per cent. per annum, &c. The purchasers or their assigns had no right to impose upon him an additional burden or duty.

3. It is contended that if the tender was properly made, the title to said township would not thereby be revested in Rufus Davenport or his heirs without a deed from the pur-

chasers. Here are no equities to be adjusted, as in the case of estates mortgaged, where there has been an entry for condition broken. If the mortgagee be in possession of the mortgaged premises, and the condition of the mortgage be performed according to its terms, the mortgagor may maintain an action at law to recover possession. 2 Mass., 493, 495; 3 Met., 55, 58. We see no good reason why the purchasers or their assigns should be in a better condition than mortgagees. The plaintiffs, upon payment of the amount due, are by operation of law in possession, as of their former estate.

In Watkins v. Eaton, 30 Maine R., 535, it is said by SHEP-LEY, C. J., "A sale for the payment of taxes is but an incumbrance upon the estate, so long as the right to redeem exists. The purchaser receives and holds the title as security for money paid; and such title is in principle a mortgage, although it does not exist in a form to be included by our statute provisions respecting mortgages." It may be greatly for the convenience of the plaintiffs to have a release from the defendants, and to have it put upon record. Before they can require this, they must pay or offer to pay, according to the statute, "the cost of reconveying the same," as well as the other amounts specified, in order to redeem the land.

Sixth. It is contended by the defendants, that by the deed from Lewis Loomis, one of the purchasers of the right acquired under the sale by sheriff Whitney, to Thomas Wentworth, one of the grantors of the defendants, on the 27th of May, 1843, and by the covenants in the same, he, the said Loomis, and those claiming under him, should be estopped from setting up or claiming under a title *subsequently acquired by him.*

It is not a deed of general warranty. It purports to sell and convey, "all his right, title and interest in and to one undivided half part of a certain township of land situated," &c. It was the title which he then had, and nothing more, which he undertook to convey. The purchasers probably knew what that title was, and took it with all its infirmities. He

did not covenant that he was seized of the premises, either by right or by wrong; or that he had good right to sell and convey the same. But he did covenant that he had not conveyed away to any other person or persons, any right or title to the premises, which he had previously held; by the stipulation, that he and his heirs " would warrant and defend the premises, &c., against the lawful claims and demands of all persons claiming by, through or under him." We do not regard this covenant as sufficient to estop him or his assigns from setting up, against the defendants, a title subsequently acquired by him.

A vendor will not be estopped to set up his title subsequently acquired, unless by doing so he be obliged to deny or contradict some fact alleged in his former conveyance. Pike v. Galwin, 29 Maine R., 183.

When one has made a conveyance of land by deed, containing no covenant of warranty, an after acquired title will not inure or be transferred to the vendee. Ibid. This case was decided in 1848, and directly overruled the doctrine asserted in the case of Fairbanks v. Williamson, 7 Greenl., 96. Mr. Justice Wells gave an able dissenting opinion, published in 30 Maine R., 539. And in conclusion says, " But if the rule, laid down in Fairbanks and al. v. Williamson, were clearly incorrect, in my judgment it would be unwise to change it without the action of the legislature. It has now remained nineteen years, many decisions have been made in conformity to it, and many titles have been acquired under it." * * " The stability of legal decisions affords a security which ought not to be impaired, unless upon the most pressing necessity."

The last decision in the case of Pike v. Galvin, having been made more than nine years, whatever may be said on the one side or the other, the interest and peace of the community require that we should abide by it.

Upon a careful examination of all the evidence in the case, and of the law appertaining to the same, we have arrived at the conclusion that the plaintiffs are entitled to recover the

land demanded in their writ; and that according to the agreement of the parties, *a default must be entered.*

MAY and DAVIS, J. J., concurred; TENNEY, C. J., and HATHAWAY, J., concurred in the result; RICE, J., concurred that there should be a default, but not for the whole tract of land.

NOTE. This case was argued in the middle district, and determined by the members of the court who held that term.