GOULD, Respondent, vs. SULLIVAN, Appellant.

*March 25 — April 11, 1893.*

*Tax titles: Offer to pay taxes frustrated by fault of treasurer: Limitation: Action, law or equity?*

1. Where the owner of lands in good faith attempted and offered to pay the taxes thereon, and was informed by the town treasurer, whose duty it was to state the amount of the taxes, that there were no taxes on the roll against such lands, he was entitled to rely upon such information, and his title was not divested by a subsequent sale of the lands for nonpayment of the taxes which he had offered to pay.

2. In such case the owner of the lands may, in like manner as if he had actually paid the taxes prior to such sale, maintain an action against the grantee in the tax deed based thereon to recover possession of the lands, even after the expiration of the three years limited by sec. 1188, S. & B. Ann. Stats.

3. Such facts are available to defeat the tax deed in an action of ejectment, and resort to an equitable action is not necessary.

APPEAL from the Circuit Court for *Oneida* County.

This was an action of ejectment commenced August 18, 1891, for the recovery of eighty acres of land, and the complaint is in the usual form. The answer, admitting possession, claims that the defendant is the owner in fee of the premises; that during the year 1884 they were subject to taxation in the county of Lincoln, and duly taxed, but the taxes thereon were not paid and were returned by the town treasurer to the treasurer of the county as delinquent by reason of nonpayment. The answer alleged the advertisement and sale of said lands for the taxes for that year, the issue of the certificate of sale to Lincoln county, and the assignment thereof to the defendant, and the execution of a tax deed thereon by the county clerk of Oneida county, in which county at the time the premises were situated, to the defendant, in the form prescribed by law, and that the same was recorded on the 29th day of May, 1888;

Gould vs. Sullivan.

and the defendant insisted on the bar of the statute created by sec. 3, ch. 309, Laws of 1880 (secs. 1188, 1189, S. & B. Ann. Stats.), and other statutes of limitation of the state applicable to the facts, and alleged that none of the taxes levied upon said lands were paid before sale, nor were they redeemed from sale prior to the issuing and recording of the tax deed.

Upon trial before the court it was found that the plaintiff had a perfect chain of title to the lands in question, from the United States to himself, when the action was commenced; that defendant was in possession; that the allegation of execution and registry of the tax deed set up in the answer upon certificates of tax sale thereof for the year 1885 for the delinquent tax for the year 1884 was true; "that on the 17th day of February, A. D. 1885, one C. A. Norway was the agent for the plaintiff for the payment of his taxes in the town of Russell, Lincoln county, the town in which the lands described in the complaint were then situated, and that he furnished and gave to the town treasurer of said town a list of the lands of the plaintiff upon which he desired to pay the taxes for the year 1884, which list included the lands described in the complaint; that said town treasurer, on the said 17th day of February, gave to said Norway a tax receipt for the taxes due for the year 1884 upon the lands described in the list so furnished to said town treasurer by him, and that on said tax receipt, so furnished, the lands described in the complaint were entered and marked, 'Not on the roll,' and no tax was carried out against said lands; that said Norway then and there, acting as the agent for the plaintiff, offered to pay, tendered, and did pay, to said town treasurer, all of the taxes levied and assessed upon and against the lands of the plaintiff in said town, according to the tax receipt furnished to him at the time he so paid said tax, and that he relied upon the said town treasurer's statement that the sum and

amount in said tax receipt so furnished was the whole amount of taxes due upon the list of lands furnished said treasurer by said Norway; and that such offer and tender of the tax upon the lands described in the complaint were, and amounted to, a payment of said tax for the year 1884." The court found that the defendant never took any title to said lands by virtue of the tax deed, and that the plaintiff was entitled to recover, but ordered the amount of said taxes, and interest thereon, to be paid into court before the entry of judgment in favor of the plaintiff, and the same was accordingly paid. From the judgment in favor of the plaintiff, the defendant appealed.

For the appellant there was a brief by *Alban & Barnes*, and oral argument by *John Barnes*. They contended, *inter alia*, that the only question is, Was the offer to pay the tax the payment of it in fact. If not a payment, ejectment will not lie. Whether a court of equity would relieve the plaintiff against a mistake of the taxing officer is a question not involved in this case. No case has held that an offer to pay a tax, coupled with a statement of the tax collector that there is no tax, is in fact a payment. The cases decided in Pennsylvania, cited by the respondent, were all cases where the treasurer made a mistake as to amount, stating it to be less than it actually was, and giving a receipt in full. The distinction between such a case and one where the treasurer states that nothing is due, is apparent. In the one case the taxpayer is lulled into a feeling of security and is led to believe that he has discharged his obligation. In the other he knows that his property is justly liable to taxation, and that either the treasurer or someone else has made a mistake if the property is not taxed; and it is his duty to investigate and ascertain where the mistake lies. The Iowa cases involving the questions involved in this case hold that where the treasurer erroneously informs a taxpayer that no taxes are levied against his property,

Gould vs. Sullivan.

and the taxpayer relies on such statement, the error will enable him to seek relief in a court of equity, and that such a court will permit him to redeem his land by paying his taxes and will annul the deed on such payment. Sec. 1188, S. & B. Ann. Stats., is a bar to this action. It is broad and sweeping in its terms, and the court can make no exceptions from its general provisions to meet the circumstances of hard cases. Cooley, Taxation, 364. Where the owner neglected to pay taxes or to redeem after sale under a belief that the taxes had been paid, the mistake does not entitle him to relief against the consequences of the omission. *Playter v. Cochran,* 37 Iowa, 258. Neither is the purchaser of land at a tax sale entitled to redeem the land from prior tax sales because he inquired of the treasurer whether or not there were unpaid taxes and was informed that there were not. *Moore v. Hamlin,* 38 Iowa, 482. When one claims to have discharged lands from a tax sale by payment of all taxes demanded of him, which is less than the whole, it must appear that no responsibility for the error rests on him. Cooley, Taxation, 367–8; *Lamb v. Irwin,* 69 Pa. St. 436. It was no part of the receiving officer's duty to give information in regard to the amount of taxes, and his mistake in saying there were no back taxes does not preclude their collection nor invalidate a sale for their nonpayment. *Elliot v. Dist. of Columbia,* 3 MacArthur, 396; *Raley v. Guinn,* 76 Mo. 275; *Gage v. Scales,* 100 Ill. 219. See also *McGahen v. Carr,* 6 Iowa, 331; *Ellsworth v. Cordrey,* 63 id. 675; 2 Blackwell, Tax Tit. (5th ed), sec. 717. If the doctrine contended for by plaintiff is held correct, neither the tax title claimant nor his grantees can ever feel any assurance that their title is good. All that is necessary to dispossess them is for the original owner, or some one in his behalf, to swear that he offered to pay the taxes on which the deeds were issued, and that he was informed by the town or county treasurer that the land

was not taxed. This is offering an extremely high premium to men not over scrupulous to commit perjury.

For the respondent there was a brief by *Hume & Oellerich*, and oral argument by *John W. Hume.* They argued, among other things, that the law did not require the plaintiff at his peril to ascertain whether or not there was a tax standing against his lands. He had the right to rely upon the official statement of the town treasurer. Having offered in good faith to pay all taxes on his lands, a subsequent sale for nonpayment of such taxes could create no lien on the lands so as to divest him of his title. *Kinsworthy v. Austin,* 23 Ark. 375; *Corning Town Co. v. Davis,* 44 Iowa, 622; *Martin v. Barbour,* 34 Fed. Rep. 701; *Breisch v. Coxe,* 81 Pa. St. 336; *Loomis v. Pingree,* 43 Me. 299; *Bennett v. Hunter,* 9 Wall. 326; *Tracy v. Irwin,* 18 id. 549; Cooley, Taxation, 323; *Schenk v. Peay,* 1 Dill. 269; *Sprague v. Coenen,* 30 Wis. 209; *Merton v. Dolphin,* 28 id. 456; *Bubb v. Tompkins,* 47 Pa. St. 359; *Price v. Mott,* 52 Pa. St. 315; *Dietrick v. Mason,* 57 id. 40; *Randall v. Dailey,* 66 Wis. 285; *People ex rel. Cooper v. Registrar,* 114 N. Y. 19; 2 Blackwell, Tax Titles (5th ed.), secs. 717, 725; *Dougherty v. Dickey,* 4 Watts & S. 446; *Laird v. Hiester,* 24 Pa. St. 464; *Baird v. Cahoon,* 5 Watts & S. 540. It is not claimed that the offer to pay the tax was a payment in fact, but that such offer discharged and relieved the lands from all forfeiture for nonpayment and from any penalty arising on account of such nonpayment

PINNEY, J. 1. The lands in question in this case were regularly taxed for the year 1884, and were returned as delinquent, sold for nonpayment of the taxes, etc., and, no redemption having been made, a tax deed thereof was executed to the defendant and recorded May 29, 1888. The lands were then unoccupied, and so remained for the period necessary to bar an action for their recovery under secs.

1188, 1189, S. & B. Ann. Stats. · It is plain that the plaintiff, the former owner, had in good faith attempted and offered to pay to the proper town treasurer, in due season, the taxes for which the lands were sold (together with the taxes on his other lands in the same town), and was informed that there were no taxes on the roll against them. The town treasurer whose official duty it was to furnish the information applied for, and who represented the state in the exercise of the taxing power, *pro hac vice,* was mistaken; and no fault, upon the facts found, can be imputed to the plaintiff. He had a right to regard the information as true, and there is nothing to show that he had any reason to distrust it. There was no occasion for him to consult the sale list, or the notice of redemption of lands sold, and he had no occasion to pursue the matter further. Shall he lose his lands by reason of the tax deed, and for no fault of his own?

Here is a clear case of mutual mistake, which would certainly be ground for relief in a court of equity under its original jurisdiction in cases of fraud, accident, and mistake,— a mistake which, if not corrected, carries with it all the injurious consequences of a fraudulent misrepresentation. Equity has jurisdiction not only to arrest tax proceedings but to set aside tax deeds founded on or resulting from fraudulent conduct of taxing officers. *Lefferts v. Calumet Co.* 21 Wis. 688; *Slater v. Maxwell,* 6 Wall. 268, 277. And the first question presented is, assuming that sufficient ground exists for avoiding the tax deed after the lapse of the statutory bar of three years, whether it can be made available in a legal action of ejectment, or resort must be had to an equitable action to cancel the tax deed. The statute, sec. 1188, is that "no action shall be maintained by the former owner, or any person claiming under him, to recover the possession of any land, or any interest therein, which shall have been conveyed by deed for the

nonpayment of taxes, or to avoid such deed against any person claiming under such deed, unless such action shall be brought within three years next after the recording of such deed." This statute does not apply (1) when the tax has been paid before sale; and (2) when the land has been redeemed after sale. Under our system of pleading no formal reply is allowed to new matter set up as a defense, but the plaintiff is allowed to reply in evidence at the trial. Had the taxes in this case been actually paid to the treasurer, there can be no doubt the plaintiff would be allowed to show that fact to defeat the tax deed, because in such case, by the statute, it would be absolutely void and of no avail. In *Morgan v. Bishop*, 56 Wis. 284, it was held that the plaintiff in ejectment might, without having pleaded them, show any facts affecting the validity of the tax deed, or which would render it unavailable to the defendant. We hold, therefore, that the question raised can be litigated in this action, under the present pleadings.

2. It cannot be maintained, we think, that the taxes in this case were actually paid. The order providing for the payment of the amount of such taxes, interest, etc., into court, before judgment was entered for the plaintiff, sets that question at rest; but the question still remains whether what took place by way of offer to pay, and mistaken information by the officer whose duty it was to state the amount of taxes, if any, on plaintiff's land, does not place him substantially, for all purposes of protecting his rights, in the same position as if he had actually paid his money, and so that the lien of the taxes was removed in like manner as that of a mortgage by tender, though not kept good, which discharges the lien of a mortgage (*Breitenbach v. Turner*, 18 Wis. 147; *Kortright v. Cady*, 21 N. Y. 343; *Loomis v. Pingree*, 43 Me. 312), and therefore the power of the taxing officer to proceed further was suspended or defeated. In *Breisch v. Coxe*, 81 Pa. St. 346, it

is said: " It is an almost universal rule which substitutes a tender for performance when the tender is frustrated by the act of the party entitled to performance." In *Randall v. Dailey*, 66 Wis. 285, it was held, in respect to paying taxes after they had been returned as delinquent,— a similar question,— that a land-owner making such payment to the county treasurer is entitled to rely upon the statement of the officer as to the amount due, and cannot be prejudiced by a mistake of the officer as to the amount, and the tax deed issued upon a subsequent sale was held void, although the sum paid was twenty-five cents less than the amount actually due; and in many other like cases the same ruling has been made, to the effect that the mistake of the officer in stating the amount due will not affect the redemption made in reliance thereon. *Dietrick v. Mason*, 57 Pa. St. 40; *Price v. Mott*, 52 Pa. St. 315; *Baird v. Cahoon*, 5 Watts & S. 540. In *Bubb v. Tompkins*, 47 Pa. St. 359, a redemption was held not defeated by the failure to pay another tax on the lands, necessary to make the redemption good, caused by the mistake of the county treasurer; and *Forrest v. Henry*, 33 Minn. 434, was a like case to the last, where a subsequent sale and deed for the omitted tax were held void. In *Van Benthuysen v. Sawyer*, 36 N. Y. 150, it was held that, if redemption of lands sold for taxes is prevented by the fault or misconduct of the officer through whom such redemption is to be made, the title will not pass by a subsequent deed to the purchaser.

These decisions are founded on the ground that the treasurer is the legal custodian of the books, and possesses full and authentic information, and it is his official duty to furnish it; that the land-owner cannot get the necessary information in any other way, and is not bound to search the books for himself, and that land-owners almost always do, and rightfully may, depend on information thus received; and that the party cannot be involved in the loss of his land

Gould vs. Sullivan.

by the mistake of the officer. The same reasons ought to be followed with like consequences in a case like this, where the land-owner applies to pay, and offers and is ready to pay, the taxes on his lands, and is informed by the treasurer, as in this case, that there are none to pay; and courts of the highest respectability and authority have so held. In *People ex rel. Cooper v. Registrar of Arrears*, 114 N. Y. 19, it was held that where a taxpayer calls upon the proper officer for a statement of all the taxes due from him, receives a statement, and pays accordingly, and afterwards the land is sold for nonpayment of taxes in arrear when such statement was furnished, and not included by mistake of the officer, the title of the taxpayer is not divested by the sale. To the same effect is the case of *Martin v. Barbour*, 34 Fed. Rep. 701–710, where the question was elaborately considered. *Kinsworthy v. Austin*, 23 Ark. 375, is to the same effect; and in the case of *Breisch v. Coxe*, 81 Pa. St. 336, 345–348, the authorities are reviewed, and it is there held that if the owner pays all the taxes stated by the treasurer he has done his whole duty; that "his claim to be protected against a sale of his lands for taxes he stood ready to pay, but which the proper officer has failed to present to him on demand, is quite as great as that of the purchaser to be protected against the act of the same officer in making a sale for taxes actually paid;" and that "it is but just that a *bona fide* attempt to pay all the taxes, frustrated by the fault of the treasurer, should stand *as the equivalent* of actual payment." *Loomis v. Pingree*, 43 Me. 312. In *Breisch v. Coxe, supra,* it was held that the five years statute of limitations contained in the third section of the act of April 3, 1804, that no action should lie for the recovery of lands sold for taxes, "unless the same be brought within five years after the sale thereof for taxes, as aforesaid," would not bar the plaintiff's right of recovery as against a sale for taxes under such circumstances,

and it was said by the court: " If, then, a *bona fide* offer to pay all the taxes, . . . frustrated by the negligence of the treasurer to give information of all the taxes charged against the land, is the legal equivalent of actual payment of taxes *in taking away the jurisdiction*, as we have seen it is, the conclusion follows that the limitation of five years in the act of 1804 does not apply to such a case. The want of authority to sell is as clear as when the taxes have been actually paid, and the owner is not bound to presume a sale, and follow up its consequences within five years. All the hardship attributed to the purchaser's want of knowledge is as fairly imputable to a case of actual payment as it is to one of tendered payment. In neither does the fact appear so as to challenge his notice."

As to all such defects or want of authority to sell and convey, the doctrine of *caveat emptor* applies, and the purchaser who takes a title depending upon the exercise of special statutory authority cannot be considered a *bona fide* purchaser without notice. He must see to it, at his peril, that the title he takes is a valid one. Besides, he never pays a full or fair price, but gets, rather, " acres for cents." Cooley, Taxation (2d ed.), 475–553; 2 Desty, Taxation, 850; *Curts v. Cisna*, 7 Biss. 260, 268; *Martin v. Barbour*, 34 Fed. Rep. 711. And this is true even after the three years statute of limitations has run in favor of the deed, to the extent that a purchaser for full value and without notice from the grantee in the tax deed will not be protected from a secret and unofficial redemption from the sale. *Warren v. Putnam*, 63 Wis. 410; *Cornell University v. Mead*, 80 Wis. 387. It was not within the plan or purpose of the statute of limitations in respect to tax deeds that the lapse of the statutory period should be conclusive as against the question of payment or redemption or *bona fide* attempts to make payment or redemption which have been frustrated by the fault of the officer to or through whom

such payment could alone be made. *McMahon v. McGraw*, 26 Wis. 615; *Fox v. Zimmermann*, 77 Wis. 415. This special limitation applies only to actions in which the validity or regularity of the tax proceedings are questioned for want of conformity with the provisions of law. Questions of payment and redemption, and matters which put the land-owner in a position where he may claim that, as to him, the taxes have been so far paid, or the land redeemed, as to make further proceedings illegal, are not within the statute or concluded by it. This is no hardship, as against the purchaser at the tax sale, who purchases for such a small consideration, and who stands in privity with the tax officers who are alone at fault in the premises, and is, in law, affected with notice of that fact. We therefore hold that the recovery in this case was right.

*By the Court.*— The judgment of the circuit court is affirmed.

The validity of tax sales where nonpayment of the taxes was due to mistake or negligence of tax officers, is the subject of an extensive note to the above case in 20 L. R. A. 487.— REP.

