69    436
31 SC ¹393

# Lamb *et al. versus* Irwin.

1. Unseated land was assessed in Clark's name; the land book showed payment of taxes by Irwin; and also after a tax sale "redeemed by Irwin for Clark's heirs; Irwin afterwards bought the land at a tax sale; and continued to pay taxes in his own name. He denied having any agency for Clark or his heirs, alleging that he had before his purchase redeemed for a creditor of Clark who had not repaid him. The court charged that the evidence was too slight to constitute an agency in Irwin for Clark. *Held* to be error—these were facts for the jury.

2. Where a party in redeeming from tax sale claims to have paid all taxes *demanded*, in order to be relieved as to any not demanded, it must appear that the fault was with the treasurer *exclusively*. The party must have demanded a search for *all* sales and not allowed the treasurer to believe that a particular sale only was asked for.

October 11th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Forest county:* Of October and November Term 1870, No. 145.

This was an action of ejectment brought November 26th 1867, by Richard Irwin against M. Anna Lamb and others, heirs of John Lamb—Orris Hall, W. P. Merrill, John C. Schooley, D. C. Hyde, George B. Downing, William Downing, J. O. McIntyre and ——— Sackett, for a tract of 1100 acres of land, being warrant No. 5217, in Kingsley township, Forest county, formerly Venango county.

The case was tried May 24th 1870, before Campbell, P. J.

The plaintiff gave in evidence: warrant, survey and patent to George Meade, dated June 13th 1798. Treasurer's deed, July 16th 1846, to plaintiff for No. 5217 sold for taxes of 1844-1845,

[Lamb *v.* Irwin.]

assessed in the name of R. L. Clark's heirs. Treasurer's deed, June 14th 1852, to J. S. Myers for taxes of 1850, 1851, assessed in the name of R. Irwin. Assignment endorsed, Myers to Irwin (plaintiff), September 3d 1852. Assessments in land-book of 5217 from 1840 to 1849 in the name "Clark," and "Clark's heirs;" from 1850 to 1853 "Richard Irwin," stated in the margin as to 1840, 1841, 1846 to 1849, 1852, 1853 to have been paid by R. Irwin; as to 1842, 1843, collected by sale to A. Raymond; 1844, 1845, 1850, 1851 sold. Also, treasurer's sales books, as to 1840, May 27th 1842, redeemed by Richard Irwin for heirs of R. L. Clark; as to 1844, "Redeemed, June 9th 1846, by R. Irwin for Clark's heirs;" as to 1846, "Redeemed, October 20th 1854, by John Lamb, B. H. & S. May."

By the defendant's evidence it appeared as follows :—

Deed, Irwin to Benjamin May and H. H. May for an undivided half of 5217. Treasurer's deed, December 29th 1826, for No. 5217 to commissioners, for taxes in the name of George Meade. Deed, Commissioners to Hezekiah May, August 24th 1834, and deed, Hezekiah May to Richard L. Clark, May 31st 1836, both for No. 5217.

J. S. Myers purchased the tract in 1862, at treasurer's sale, for the plaintiff; who told him, that he had advanced the money to pay taxes on the tract and the owner had failed to refund them; Myers thought Irwin mentioned Clark's name.

Richard L. Clark died, January 20th 1842, in Michigan, leaving an only child, Lavinia Clark, born August 4th 1837.

Deed, Lavinia Clark, January 5th 1852, to Benjamin May, H. H. May and Selden T. May for No. 5217. Miss Clark afterwards married T. P. Sheldon, also residing in Michigan. Deed, T. P. Sheldon and Lavinia his wife for 5217, dated December 6th 1854, to Benjamin May, H. H. May, John Lamb and Orris Hall. Deed, B., H. H. and S. T. May, October 20th 1854, to John Lamb for an undivided fourth of the tract. Deed, April 6th 1863, S. T. May to Orris Hall for an undivided fourth. John Lamb died November 19th 1863, leaving a widow M. Anna Lamb and seven children, defendants. The other defendants derived title from the Mays.

The defendants called Benjamin May, who testified that in October 1854, he and John Lamb went to the county treasurer's office, and May told him that he had come to redeem 5217, giving him the number of the lot and Richard L. Clark as the owner's name; he showed the treasurer by the deed that it was then in Clark's minor daughter; "I requested him to give me the amount of the redemption-money against No. 5217; he took his book and looked over it, and gave me the amount, and I paid him—Lamb and myself; I paid all he demanded, * * * I looked at the sale entry on the books; the treasurer turned to the place where the sale was made in 1846; I suppose I redeemed the one sale; I

looked at the entry of this sale in 1846; the treasurer called my attention to this entry, and I knew there had been a sale; I told him I wanted to pay all the taxes against the lot; I did not call the attention of the treasurer to the other tax sale, for I did not know of it; I don't remember that I wanted to pay the taxes on the land, on which no sales had been made; I did not pay any at that time; I told the treasurer I wanted to redeem all that was against it. I knew of the sale to Irwin, but don't know whether I stated so to the treasurer or not. I told him I wanted him to hunt and give me all the redemption-money."

In rebuttal the plaintiff (Irwin) testified that neither Clark nor his heirs nor administrators ever furnished him any money to pay taxes on the tract, nor to redeem it; the redemption-money of 1842 had been furnished to him by a man named Fenton, who had a claim against Clark's estate; he wished to prevent the title from passing into other hands. Plaintiff paid taxes of 1840 and 1841; sent receipt to Fenton, and requested him to refund what he had paid out, he sent plaintiff no money; it was bid in by Raymond; plaintiff redeemed to save himself, and get deed from Raymond; plaintiff paid taxes of 1846, 1847 and 1848; it was bid in by Myers for taxes of 1850, 1851; plaintiff paid taxes of 1852, 1853, 1854, others then took possession, and paid taxes. Myers's testimony was correct, except that Clark's heirs were not mentioned; plaintiff never saw or knew Clark; got one letter from him asking about the quality of the land; he corresponded with Fenton, who told him Clark was dead, and he wanted to secure the title for his own benefit.

The plaintiff's 5th point was :—

" When May and Lamb went to redeem the land in 1854, they, as well as the treasurer, had duties to perform in the proper consummation of that purpose, and if, through the joint carelessness or neglect of them and the officer, the outstanding sale of 1852 was unredeemed, the redemption from the sale of 1846 alone would not avail the defendants."

This was affirmed.

His 6th point and the answer were :—

" To bring a case within the exceptional principle claimed, that a failure to redeem is in law a good redemption, the evidence to show that such failure was the fault of the officer exclusively ought to be clear, consistent and satisfactory."

" We answer this point that the jury must be satisfied that the failure was the fault of the officer exclusively, and they must find according to the weight of the evidence."

The defendant's 2d, 3d, 4th and 5th points were answered in the charge, and are as follows :—

" 2. It is not necessary to show an express agreement to take charge of the land and see to the payment of the taxes, in order

[Lamb v. Irwin.]

to preclude the plaintiff from holding the land under the treasurer's sale, but such agency and trusteeship may with propriety be inferred from the acts of the plaintiff, such as paying the taxes for Clark while he was living, paying the taxes for his heirs after his death, and for them and in their name redeeming the land from sales made by the treasurer.

" 3. If the jury believe from the evidence that on the 20th of October 1854, John Lamb and B. and H. May, for themselves and Selden May, called upon the treasurer for the purpose of redeeming the tract in controversy; that they informed the treasurer that such was their object; that the treasurer informed them the amount necessary to redeem; that thereupon they paid to the treasurer the full amount demanded by him, such payment was a redemption of the land from the sales under which the plaintiff claims, notwithstanding the treasurer wholly overlooked the sale of 1852, and demanded and received only a sum sufficient to redeem the land from the sale of 1846.

" 4. If the jury believe from the evidence that the plaintiff did pay taxes on the tract for Clark in his lifetime, that after the death of Clark he paid taxes and redeemed the land in the name of Clark's heirs, that on the 28th of May 1842, in their name he paid the taxes of 1840 and 1841; that on the 27th of May 1842, in their name he redeemed the land from the treasurer's sale of 1840; that on the 9th of June 1846, in their name he redeemed the land from the treasurer's sale of 1844; these facts furnish evidence, if unexplained, from which the jury may conclude the existence of such an agency or trust as would prevent the plaintiff from purchasing the land at treasurer's sale and setting up the title acquired thereby against Clark or his heirs, or those claiming under them, and that this conclusion is strengthened, if it appears that these taxes and redemptions were not made by Irwin from his own funds.

" 5. If the jury believe from the evidence that after the treasurer's sale to James S. Myers, in 1852, and in the fall thereafter, the plaintiff procured an assignment of the deed from Myers, claiming that he (plaintiff) was the owner of the land, or that he was entitled to redeem the same, and paid for such assignment no more than the amount necessary to redeem, the transaction was but a redemption, and the plaintiff got no other or better title than he had prior to the treasurer's sale to Myers."

The court charged:—

" The plaintiff in this suit seeks the recovery of the undivided half of about 1000 acres of land, in Kingsley township, in this county, known as lot No. 5217, in the name of George Meade, and he has shown a paper title that, in the absence of evidence on the part of the defendants, would entitle him to recover. But the defendants allege that at the time the plaintiff,

[Lamb *v.* Irwin.]

Irwin, bought this land in dispute, at treasurer's sale in 1846, he was the agent of the owner of the land, or of the man who had been the owner, and was then dead, and that the agency had not terminated, and that his purchase was in violation of the fiduciary relation he sustained toward the estate, and therefore the sale was void; and that the purchase of the tract from Colonel Myers, in 1852, was at his instance, and the assignment from Myers to him before the time of redemption had expired, was in effect all his own act, done for the purpose of defeating the title of the heir of the principal. [If Irwin was the agent of the heir of Richard L. Clark, and the relation of agency had not been explicitly renounced, this would be so. But was R. Irwin ever the agent of Clark, either for the payment of taxes, or the redemption of this or any other of Clark's land, in Venango county? Is there any evidence that Clark ever asked him to become his agent, or that Irwin ever agreed to be his agent, or to occupy any confidential relation toward him or his heir, at any time, either before or after Clark's death?] The only evidence we recollect that there was any communication between Clark, in his lifetime, and the plaintiff, was a little inquiring how many pine trees were on an acre, but nothing about taxes, and this is all the communication disclosed between them. The land was sold for taxes in the spring of 1840, and within two years thereafter a man named Fenton sent Judge Irwin $30 to redeem it, alleging, if the evidence is believed, that he was a creditor of Clark's, and that he did not wish his title to be lost to this land, and with $29.24 of that money, it appears this land was redeemed, and about the same time, or shortly after, the plaintiff, instead of allowing it to be again sold for taxes of 1840 and 1841, paid the taxes for these years with the 76 cents remaining in his hands of Fenton's money, and the balance with his own money. This redemption was made for the heirs of Clark. Then in 1844 it was again sold for taxes and bought by a man named Raymond. Two years had expired, within one day, and the plaintiff, who had then bid in the land, at the treasurer's sale of 1846, went to the treasurer and redeemed and took the treasurer's receipt for the redemption-money, showing that he redeemed for himself, and not for Clark's heirs. On the treasurer's sale list, it is marked 'redeemed for Clark's heirs.' The plaintiff had a right, when he paid the money to the treasurer, to say for what he paid, and if the treasurer receives the money, he is bound to give a receipt as required, and that in the hands of the payor is evidence of what it contains. This, we think, is the best evidence of what the money is paid for; but it is for you to say. The evidence is for you. [In all this, there is no communication between Clark or his heirs and the plaintiff, and we think the evidence of agency, or confidential relation toward Clark, or the estate of Clark, either by contract or act of his for the

[Lamb v. Irwin.]

estate, is too slight to estop him from becoming a purchaser at treasurer's sale of the title to this lot,] and therefore we decline to answer the first two points of the defendant, as requested. We answer the plaintiff's 5th and the defendant's 3d points substantially in the affirmative: If Benjamin May, having the deed of Clark's minor daughter, went to the treasurer, telling him that Lavinia Clark was still a minor, and that he wanted to redeem the land and pay all taxes against it since the death of Richard L. Clark, and the treasurer, in pursuance of such demand, made an examination and made one account purporting to be all that was against it, and Messrs. May and Lamb, believing it to be all that was against it, and all that was demanded, it would be a good redemption, notwithstanding the sale of 1852 was omitted altogether. [In a word, if the omission was the fault of the officer and not of those redeeming, it would be a good redemption, and your verdict should be for the defendants. If Mr. May knew of this sale of 1852, or any other sale, and did not call the attention of the treasurer to it, the redemption is not good, and your verdict should be for the plaintiff for the half. This is the important question in this case, and it is referred to you for your careful consideration.] [In answer to defendants' 4th point, we think the evidence of agency is too slight to disqualify the plaintiff from purchasing at treasurer's sale.] We answer the defendants' 5th point in the affirmative: if the plaintiff was the owner of the title at the time of the sale of 1852; if he was not the owner of the title before that time, but if he was a stranger to the title, the purchase made by Myers would not be a redemption, and might convey a good title. The facts are for you."

The verdict was for the plaintiff for an undivided half of the premises mentioned in the writ.

The defendants removed the record to the Supreme Court; they there assigned for error:—

1 and 2. The answers to the defendant's 2d and 4th points.

3, 4 and 7. The parts of the charge in brackets.

5 and 6. The answers to the plaintiff's 5th and 6th points.

W. D. Brown (with whom was H. Souther), for plaintiffs in error.—As to the 1st, 2d, 3d and 4th specifications. One who has undertaken to act as the agent, to look after lands and see to the payment of the taxes, or who has, by his acts, induced the owner to repose a trust in him that he will do so, cannot acquire a title adverse to his cestui que trust without first renouncing the trust: Henry v. Raiman, 1 Casey 354; Reid v. Stanley, 6 W. & S. 369; Bartholemew v. Leech, 7 Watts 472; 1 Story Equity, §§ 321–322. As to the 5th, 6th and 7th specifications: Where the owner of unseated land presents himself at the treasurer's office and offers to pay taxes, or redeem lands from tax sales, the trea-

[Lamb *v.* Irwin.]

surer, as a public officer, has duties to perform, the neglect of which cannot fairly be charged against him, who is doing for himself all the law enjoined: Price *v.* Mott, 2 P. F. Smith 315; Baird *v.* Cahoon, 5 W. & S. 540; Bubb *v.* Tompkins, 11 Wright 359; Laird *v.* Hiester, 12 Harris 452; Dietrick *v.* Mason, 7 P. F. Smith 40.

*B. J. Reid* (with whom was *F. D. Kinnear*), for defendant in error.—As to the 4th point; the court expressed but an opinion; this was not binding nor error: Ditmars *v.* Commonwealth, 11 Wright 335; Sailor *v.* Hertzogg, 10 Barr 296; Schoneman *v.* Fegley, 2 Harris 376; Church *v.* Ruland, 14 P. F. Smith 432. As to agency: McHenry's Appeal, 11 Id. 432. As to plaintiff's 5th point: Baird *v.* Cahoon, 5 W. & S. 540. As to the 7th error: Allegheny *v.* Nelson, 1 Casey 332; Kline *v.* Johnston, 12 Harris 72; Storch *v.* Carr, 4 Casey 135. A redemption from one tax sale does not work a redemption of all others: Price *v.* Mott, 2 P. F. Smith 315; Bubb *v.* Tompkins, 11 Wright 359; Laird *v.* Hiester, 12 Harris 452.

The opinion of the court was delivered, October 30th 1871, by

AGNEW, J.—We think the court erred in withdrawing from the jury the question of the agency of Richard Irwin for Richard L. Clark and his heirs, and of the offer to redeem alleged to be made by Benjamin May. The facts collected together and summed up in the 4th point of the defendants below were undoubtedly some evidence of Judge Irwin's agency in payment of the taxes for Clark, and if unexplained might lead to the conclusion that he had been employed by Clark or his heirs to attend to the land and prevent its sale; for it is not probable that any one would volunteer for distant owners and strangers to redeem and to pay taxes. It is true that Judge Irwin gives a very natural explanation of his interference, which, if true, would prevent any inference from his acts that he was acting for the Clarks. But here is just where the learned judge below erred in not submitting the fact to the jury with proper instructions. Judge Irwin is the party, and the explanation came from himself as a witness. His credibility, therefore, ought to have been passed upon by the jury. Nor while the high character of the witness might in this case avail much, it is too important to be overlooked, that since the Act of 1869, making parties witnesses in their own causes, their credibility has become a question of great importance in settling controversies. They are now often found standing as exact antipodes to each other, and a jury must determine their relative credibility to arrive at a verdict. The finding of the alleged agency would have vitiated the treasurer's sale, and therefore it was a material fact in the cause: Bartholomew *v.* Leach,

[Lamb v. Irwin.]

7 Watts 272; Comegys v. Carly, 3 Id. 380; Reed v. Stanly, 6 W. & S. 376; 1 Casey 354. It is argued that the portion of the charge of the court assigned for error was the expression of an opinion only upon the fact, when the judge said the evidence was too slight to estop Irwin from becoming a purchaser at treasurer's sale. We might be induced so to consider this part standing alone, but we must interpret it by the answer of the judge to the defendants' 4th point, where he says distinctly the evidence of agency is too slight to disqualify the plaintiff from purchasing at treasurer's sale. A jury, listening to both portions of the charge, could scarcely avoid the conclusion that they were instructed to disregard the evidence.

We discover no error in the principles given to the jury governing the offer of Benjamin May to redeem the land from all tax sales. Undoubtedly the failure to find the sale, which was overlooked, must have been the fault of the treasurer exclusively, and therefore the party must have distinctly and clearly called his attention to the demand for a search for all sales. He must not permit him to rest under the supposition that a particular sale only is asked for in order to redeem. If Benjamin May did not know of the sale of 1852, as he swears, he could not call the attention of the treasurer to it, and the case would then turn on the distinctness and clearness with which he made known to him the request to redeem from all sales theretofore made. It does not appear in the evidence found in the paper-book that May knew of the sale of 1852, and if there were no question of credibility of the witness, it was an error on part of the court to say that if he did not call attention to the sale of 1852, the redemption is not good, and the verdict should be for the plaintiff. We should feel loath to reverse for this alone, for it is quite probable the credibility of May, as to his want of knowledge of the sale of 1852, may have been questioned before the jury. But for the former error the judgment is reversed, and a *venire facias de novo* is awarded.