CONKLIN, Appellant, *v.* CULLEN, Respondent.

(No. 1,657.)

(Submitted October 9, 1903. Decided October 28, 1903.)

*Taxation—Delinquent Taxes—Statement of County Treasurer —Sale—Redemption—Publication of Delinquent Tax List in Newspaper—Assessment of. Taxes—Validity.*

1. An owner of land which had been sold for taxes was not entitled to relief from the tax deed merely because subsequent to the sale he requested the county treasurer to give him a statment of the taxes due on the premises, but without saying anything with reference to redeeming the land from any sale, and the treasurer failed to inform him of the tax sale.
2. A contract between a county and a newspaper for the county printing, made pursuant to the statutes, is a direction to the county treasurer from the board of county commissioners, within Political Code, Section 5874, to publish the delinquent tax list in such newspaper.
3. Political Code, Section 3874, requires the publication of the delinquent tax list once a week for three successive weeks. Section 3877 provides that the time of sale must not be less than 21 nor more than 28 days from the first publication. The notice of sale published with a delinquent tax list was published December 30, 1895, and January 6 and January 13, 1896. The sale took place January 27, 1896. *Held*, that the publication was for a sufficient time.
4. The failure of the county clerk to make and file a duplicate assessment roll does not affect the validity of the taxes assessed.
5. One who pleads in a suit to obtain relief from a tax deed, a tender of the amount paid by a purchaser for his tax deed, cannot contest the validity of the tax for the nonpayment of which the premises were sold.

*Appeal from District Court, Lewis and Clarke County; Henry C. Smith, Judge.*

ACTION by S. L. Conklin against W. E. Cullen. From a judgment for defendant, plaintiff appeals. Affirmed.

*Mr. Albert I. Loeb,* for Appellant.

Citing: Black on Tax Titles, Secs. 362, 267; Blackwell on Tax Titles, 717, 398; *Corning Town* v. *Davis,* 44 Iowa, 628; *Gould* v. *Sullivan,* 20 L. R. A. 487; *Price* v. *Mott,* 5 Pa. St. 315; *Eastman* v. *Linn,* 26 Minn. 215; *Blackwell* v. *First Nat'l Bank,* 63 Pac. 43; *Early* v. *Doe,* 16 How. 610; *Roberts* v. *First Nat'l Bank,* 79 N. W. 1051.)

*Messrs. Cullen, Day & Cullen,* for Respondent.

MR. COMMISSIONER CLAYBERG prepared the opinion for the court.

This is an action to obtain relief from a tax deed to lot 1, block 25, Hauser Addition to the city of Helena. The plaintiff alleges that his agent applied to the county treasurer in 1899 to redeem the lot from tax sale and pay all delinquent taxes thereon, and that the county treasurer's office informed him that the taxes of 1896, 1897 and 1898 were all that were delinquent, giving the amounts due for taxes for those years; that as a matter of fact the taxes for 1895 had not been paid, and a sale of the lot had been made for the taxes of that year, and a certificate of sale had been given to the defendant, Cullen; that, after the deed had been given by the county treasurer to said Cullen, the plaintiff tendered to him $250 in gold, the amount paid by him in purchasing said lands, together with interest, and also the amounts paid by him for taxes on the property subsequent to the year 1895. The defendant denied the allegations of this complaint generally, except that the tax deed had been delivered to him, and that there had been tendered to him $250, which he admitted. The case was heard, and the court below entered a decree in favor of defendant, from which this appeal is taken. The appeal is from the judgment, and all the record contains is the judgment roll.

Counsel for appellant presents to this court three propositions which he insists are conclusive that the court erred. They are as follows: First, that it was the duty of the county treasurer's office, upon inquiry, to state truthfully the condition of affairs, and that, by the mistake of that office, plaintiff was not informed of the fact that the property had been sold for taxes for the year 1895; second, that under the requirements of the Political Code the county commissioners must designate the paper in which the delinquent tax notice and notice of sale must be published, and that the commissioners never made such designation, and, further, that the publication of the notice was not for a sufficient length of time; third, that a duplicate assessment book was not made during that year, and therefore the assessment was absolutely void, and no jurisdiction existed to sell the property. We shall discuss these propositions *seriatim*.

1. Was the appellant correct in his first contention? The decree entered contains findings of fact made by the court below upon the trial of the case. These findings disclose that on January 7, 1899, the agent for plaintiff presented to the county treasurer's office a written request for a statement of taxes *due* on the premises; that the deputy county treasurer after a time wrote on the back of the written request that taxes were due upon the premises for 1896, 1897 and 1898, giving the amounts. Nothing was said of the taxes of 1895. The court also found that the agent of plaintiff, when he made the above request, did not say anything with reference to redeeming the property from any sale, and that such agent did not tender the county treasurer any money for paying the particular tax involved in the case, before the property had been sold at tax sale.

Counsel for plaintiff, as to the first proposition, cites Black on Tax Titles, Sec. 362, where we find the law upon this subject laid down in the following language: "But when a party, in redeeming from a tax sale, claims to have paid all charges demanded by the officer, it must appear, in order that he may be relieved as to any not demanded, that the fault was with the treasurer exclusively. The party must have demanded a search

for all sales, and not allowed the treasurer to believe that a particuar sale only was inquired for. Indeed, we may lay it down as a general rule that the whole responsibility must be cast upon the officer, and the redemptioner must show his own hands to be entirely clear of any share in the misunderstanding. * * * Hence, if the officer exactly carries out the instructions of the owner, the latter has no ground for relief, although, through his own inadvertence, the result is entirely different from that which he supposed he was about to accomplish."

Counsel also cites *Corning Town Co.* v. *Davis,* 44 Iowa, 622. An examination of that case discloses the following state of facts: After a tax sale the plaintiffs applied to the treasurer of the county in which the land was situated "to pay all taxes due or delinquent upon the property of plaintiffs there assessed, and to redeem from all tax sales that might have been made of such lands." A long list of property was given the officers, for the purpose of allowing them to make a careful examination of the books of the county and ascertain delinquent taxes and tax sales. A sum of money deemed sufficient was paid to the officers for the purpose of paying the taxes and redeeming from sales. An examination was made, certain taxes were paid, and a sum of money returned to plaintiffs with the report that no further amount was due for taxes, or required to redeem the land. The treasurer and clerk assured the plaintiffs that all taxes were paid, and all lands redeemed from tax sales. The officers did not discover the sale under which defendant's deed was made until the time for redemption had expired, and prior thereto made no report to plaintiffs that such sale had been made. The amount of money they received from plaintiffs and repaid to them was sufficient to redeem from the tax sale under which defendant claimed title. The Supreme Court of Iowa correctly decided the point in the following language: "The other point, that, as it was the duty of the treasurer and clerk to impart correct information to the agent of plaintiffs, applying to them to redeem the lands from tax sales and to pay all delinquent taxes thereon, he was justified in relying upon their

representations, and their mistake, error or negligence is sufficient ground to support the right of redemption after the tax deed was executed." It is very apparent that the above authority is not in point in this case. Plaintiff's agent only asked the county treasurer for a "statement of taxes *due*" upon the property in question, and made no inquiry as to whether the land had been sold for taxes previous to that time, and made no attempt to redeem from any sales.

Counsel also cites in support of this proposition the case of *Gould* v. *Sullivan,* 84 Wis. 659, 54 N. W. 1013, 36 Am. St. Rep. 955, 20 L. R. A. 487. An examination of that case discloses that plaintiff gave the taxing officer a list of land upon which he desired to pay taxes for 1884. The officer received payment, and delivered a receipt for all lands in the list, except one description, and indorsed on the receipt, as to that description, "Not on the roll." The plaintiff paid all the taxes levied and assessed upon the other lands according to the tax receipt. It afterwards turned out that the land, the description of which the county treasurer had informed plaintiff was not on the roll, had been assessed and eventually sold for taxes, and a deed therefor given. The court properly held that the plaintiff offered to pay all taxes assessed against him, and relied upon the information of the treasurer that no taxes were assessed against this particular parcel of land, and was therefore in the same position as though he had paid all the taxes, and might contest the deed. It is equally apparent that this authority is not in point in this case.

The correct doctrine, in our judgment, is announced by the Supreme Court of Iowa in the case of *Moore* v. *Hamlin,* 38 Iowa, 482, citing *Bolinger* v. *Henderson,* 23 Iowa, 165, and *Noble* v. *Bullis,* 23 Iowa, 559, 92 Am. Dec. 442. The plaintiff testified: "Soon after I had bought the lot I ascertained that Mr. Rockwood had a tax title on it. I went there to ascertain how the matter stood. After doing this I was told perhaps there might be some back taxes on it, on which I went to the treasurer, Mr. Cobb, and asked him if there were any back taxes upon

the lot in question. He took down his book and looked through several years, and told me there was no back taxes on the lot; and, thinking I was getting a warranty deed from this party, I thought from this time forward the land would be clear." The land had been sold for taxes before plaintiff applied to the treasurer. The court say: "It does not appear that he made the slightest effort, before his purchase, to ascertain the condition of the title. When he applied to the treasurer he inquired after back taxes, and not after tax sales. For aught that appears, the statements made by the treasurer were in every respect true, for the taxes of 1868 had been satisfied by sale, and it does not appear that the taxes of any other year were unpaid. Nor does it appear that Morris went to the treasurer prepared to pay the taxes or redeem from tax sales, or with the purpose of doing so."

The case of *Lamb* v. *Irwin,* 69 Pa. 436, is also in point against the contention of plaintiff. The court uses the following language: "Undoubtedly the failure to find the sale which was overlooked must have been the fault of the treasurer exclusively, and therefore the party must have distinctly and clearly called his attention to the demand for a search for *all* sales. He must not permit him to rest under the supposition that a particular sale only is asked for in order to redeem."

Judge Cooley, in his work on Taxation (3d Ed., page 1049), says: "If by the mutual mistake of the officer and of the party the redemption has failed, or if it is left in doubt whether the officer was in fault at all, the case presents no other ground of equity than would exist in any case where, through inadvertence or misapprehension, the party has failed to assert his right in due season; and he will be left by the law where his own negligence or inattention has placed him."

We think these authorities conclusively settle the first proposition against plaintiff's contention.

2. As to the designation of the newspaper in which the notice of sale was to be published, and the sufficiency of the time of publication: Section 3875 of the Political Code requires

that the publication of the delinquent tax list "must be made once a week for three successive weeks in such newspaper published in the county as the board of county commissioners directs." Although the statute requires the treasurer to publish the delinquent tax list notice (Section 3874, Political Code), it must be published in such newspaper as the board of county commissioners directs. This is a part of the county printing, which must be arranged for by the board. The findings disclose that at the time the notice in question was published there was in existence a contract between the paper in which the notice was published and the county, made pursuant to the statutes of this state. This contract being in existence and binding upon the county commissioners, its execution may be treated as an absolute direction to the treasurer to publish the notice in that paper. The statute does not require the commissioners to *designate* a paper for publication, but to *direct* the publication to be made in a certain paper.

Plaintiff further insists that the publication was not for a sufficient time. Section 3877 of the Political Code provides: "The time of sale must not be less than than twenty-one nor more than twenty-eight days from the first publication, and the place must be in front of the county treasurer's office." The findings of the court are as follows: "That notice was duly published under dates of December 30, 1895, January 6, 1896, and January 13, 1896, and that the sale took place January 27, 1896." It thus appears that the publication was for three successive weeks, and that the time of sale was not less than twenty-one nor more than twenty-eight days from the first publication, so that the plaintiff's contention must be decided adversely to him.

3.   Did the failure of the county clerk to prepare a duplicate assessment book for the year 1895 affect the validity of the tax in question? Even though the duplicate assessment roll should have been made and filed, the omission to do so does not aid plaintiff's contention in the least. The making and filing of the duplicate assessment roll have nothing whatever to do with the

validity of taxes assessed. It is simply a copy of the original assessment roll as finally completed, made by the clerk for the purpose of allowing him to keep on file in his office, for reference, the original assessment roll. Its omission was a mere irregularity. Besides, plaintiff does not contest the validity of the tax by the allegations of his complaint, but pleads a tender of the amount paid by defendant for his tax deed. We therefore do not consider or decide whether the provisions of the law of 1891 or the Political Code apply to this question.

We find no merit in appellant's contentions, and advise that the judgment appealed from be affirmed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment appealed from is affirmed.