# APPENDIX A.

Lefferts vs. The Board of Supervisors of Calumet County and another.[*]

Injunction, *to restrain tax sale, for fraudulent assessment.—Right of holder of school land certificate to such injunction.*

1. The owner of a school land certificate has such an interest in the land as entitles him to have the collection of an illegal tax thereon restrained.
2. After a tax on school lands held by certificate has been returned delinquent to the county treasurer, the county is a proper party defendant to an action to restrain its collection.
3. The collection of a a tax upon land will be restrained where the taxing officers of the town have fraudulently discriminated in the assessment, with the intention of compelling the owner to pay more than his just proportion of the tax payable in such town.

Cole, J. This action is brought to restrain the collection of a tax levied and assessed upon school lands belonging to the appellant, and to have the tax declared void.

He has purchased the lands of the state, holding the usual certificates of sale, and undoubtedly has such an interest in them as to entitled him to the relief demanded, providing it would be granted upon the facts stated in the complaint to the owner in fee. For it has frequently been held that the holder of these school land certificates has an equitable title or interest in the lands embraced in them which he can convert into a per-

---

*After the court had decided in the consultation room the questions arising in this case, and after the opinion had been written, but before the decision was announced, the action was discontinued by stipulation. It has been thought best to publish the opinion here, as indicating the opinions of the court on several points of some importance.* Rep.

fect legal title upon paying the amount due the state. And for many purposes he is treated as the real owner of the lands, and may have the collection of the tax upon them restrained if he lays a proper ground for such relief.

The complaint was demurred to principally on two grounds. First, it is claimed that there was a defect of parties, the complaint disclosing no reason why the board of supervisors of the county of Calumet should be joined as a party. The complaint states that the tax therein mentioned has been returned as delinquent to the county treasurer, who is about to return a certified list of the delinquent taxes to the state officers for collection by a resale of the lands. The county is certainly interested in these taxes to the amount thereof, because the statute authorizes the state treasurer to place to the credit of the county the amount of the delinquent tax and interest. (Sec. 26, chap. 18, R. S.) If the taxes are declared illegal, the county will have to make good the amount placed to its credit. And in this case the county is interested in having the entire amount collected, since in adjusting its finances with the state it will be entitled to a credit to this extent. So that there can be no doubt that the county was properly joined in the action.

The next general objection to the complaint is, that it does not state facts sufficient to constitute a cause of action; and several grounds are specifically stated in support of this objection. It will, however, not be necessary to notice all these various grounds of objection, as they can be conveniently disposed of in considering the question whether there is any cause of action stated in the complaint. The complaint is quite lengthy, and contains some immaterial matters. A general analysis of the matters therein stated will not be given. The material and important portion of it, however, is where various instances of grossly unequal and unjust assessment of taxes are given, and it is averred that the town assessors "fraudulently made a distinction in such assessment and taxation

against the plaintiff, with the intention and design of making him pay more than his just and equal portion of the taxes to be paid in the said towns." And we think the main question in the case is, assuming that a fraudulent and unlawful discrimination was made against the plaintiff by the taxing officers, by which he was made to pay more than his just proportion of the tax, does this constitute a good ground for an injunction? It seems to us that it does. Fraud, it is said, vitiates everything, even the most solemn judgments of courts. Why should there be any greater immunity in the proceedings of officers for the assessment and levying of taxes than in the judgments of courts or in the contracts of parties? We know of no reason. It is said that it is of vital necessity to the operation of government that a revenue be collected. So indeed it is. But, to secure this result, must the corrupt and fraudulent conduct of the officers whose duty it is to collect this revenue, be overlooked, when it tends to injure and oppress the tax payer? If so, there is but little value in legal enactments and constitutional guarantees. For, if taxing officers may frauddulently assess and levy a tax, discriminating against an individual or class with the design of making him pay more than his share, and the party oppressed not be entitled to relief by injunction, there would in many cases be a failure of justice. What is a party's remedy under such circumstances? Must he bring a special action against the corrupt officers? *Weaver v. Devendorf*, 3 Denio, 117, is a direct authority upon the point that such an action will not lie. (Contra, *Stearns v. Miller et al.*, 25 Vermont, 20; *Thames Manuf. Co. v. Lathrop*, 7 Conn., 550; *Freeman v. Kenney*, 15 Pick., 45.) But suppose the action would lie, he would frequently have no practical remedy on account of the irresponsibility of the parties whom he sued. We think no considerations of convenience or public policy should counteract or overcome the right of the aggrieved citizen to an injunction, when he rests the application upon the

Lefferts vs. The Board of Supervisors of Calumet County and another.

ground of the corrupt and fraudulent conduct of the taxing officers. Errors of judgment in the valuation of the property, when officers are attempting in good faith to discharge their duties, may well be held not to vitiate a tax, although the effect of such erroneous valuation may be to increase the burdens of a citizen beyond his just proportion. This doctrine we have frequently recognized. But we think this rule should not be extended to cover a case where the officers fraudulently make a distinction in the assessment and taxation, with the intention and design of making a party pay more than his just and equal portion of the taxes. We have found no direct authority in support of the proposition that fraud on the part of officers in assessing and levying taxes, is a good ground for the interference of a court of equity ; but such interference appears to us to be in accordance with sound reason and justice. The absence of authority upon the point may probably be accounted for on the ground that officers have not often been guilty of such misconduct. And it is to be hoped that these allegations of fraud in the complaint will be disproved when it comes to a hearing of the case upon the merits. But for the purpose of determining whether the complaint states a cause of action, we must take them to be true.

It is claimed that, although the assessors acted wilfully and corruptly, with intent to compel the plaintiff to pay more than his just and equal proportion of the taxes, in assessing and valuing his land, still the party has a remedy by applying to the board of equalization. This remedy is said to be complete, and renders all interference of a court of equity unnecessary. It is true, the statute provides boards to equalize the assessment of property. Sec. 22, chap. 167, Laws of 1859. In all cases of mere errors of judgment in valuing property, when the assessor acts in good faith and according to his best information, it may well be held that the party whose property is assessed too high should go before the board of equalization

and have the assessment corrected. The presumption is that the board would correct the error as soon as their attention was called to it, or when satisfied that a mistake had been made. But when the assessor acts corruptly and fraudulently in the matter, this presumption can hardly arise. At all events, the assessor is one of the town board of equalization, and of course knows the wrong he has committed, and can repair the injury by calling the attention of the other members of the board to the inequality. There is no necessity for a person applying to the board under such circumstances. For one member of it is guilty of the fraud perpetrated, and has a *locus penitentiae*, an opportunity to repair the wrong if so disposed. It is not like the case where inequalities in the assessment exist and no member of the board has knowledge of them. The board are not to wait for complaints to be made before correcting inequalities, but must proceed on their own motion to correct them when apparent on the roll. And when they know them to exist, and can be said to be aware that they were designedly committed for the purpose of discriminating unjustly against an individual, we do not think the aggrieved party need apply for a correction in order to preserve his legal rights. In the case of the county board, it appears from the complaint that although the matter was called up and the unjust discrimination pointed out, yet no corrections were made. No other mode of relief was therefore open to the plaintiff but to apply to a court to restrain the collection of the void tax.

But it is further contended that these taxing officers, in the discharge of their duties, act judicially, and therefore that a court of equity cannot set aside a decision made by them on a subject within their jurisdiction, even when they act corruptly and fraudulently. It is said to be strictly analogous to a case where a judge decides a cause corruptly and from improper motives. But for such a judicial determination the aggrieved party has his remedy, if it be erroneous, by appeal or writ of

error. There are cases which hold that no civil action lies for misconduct or delinquency in the performance of judicial duties, however gross. This is the result of the decision in 3 Denio, before cited. To the same effect is the case of *Wilson v. The Mayor &c. of the City of New York*, 1 Denio, 595. But it is doubtful whether our statute has not changed even that rule in certain cases. Sec. 24, chap. 119, R. S. But we do not think the acts of taxing officers, whose duties are chiefly of a ministerial character, come within the reason of the rule applicable to strictly judicial officers. See the cases in Vermont, Massachusetts and Connecticut before cited.

In deciding upon the sufficiency of the complaint, we expressly confine ourselves to a consideration of the allegations that the town assessors fraudulently made a distinction in the assessment and taxation against the plaintiff, and did this with the intention and design of compelling him to pay more than his just portion of the taxes. Upon this allegation we have no hesitation in saying the plaintiff is entitled to the relief demanded in the complaint.

The order of the circuit court sustaining the demurrer must therefore be reversed, and the cause remanded for further proceedings.