## SLATER *v.* MAXWELL.

1. Where land is sold for taxes the inadequacy of the price given is not a valid objection to the sale.
2. Where a tract of land sold for taxes consists of several distinct parcels, the sale of the entire tract in one body does not vitiate the proceeding if bids could not have been obtained upon an offer of a part of the property.
3. Where a fact alleged in a bill in chancery is one within the defendant's own knowledge, the general rule of equity pleading is that the defendant must answer positively, and not merely to his remembrance or belief.

Accordingly, when a bill alleged, that at the time that a very large tract

of land—sold for taxes—was put up for public sale, a great many persons were present with a view to purchase small tracts for farming purposes, but that the defendant stated to them that the complainant would redeem his land from the purchasers, and in that way put down all competition, and had the entire property struck off to him for the amount of the taxes; and that this conduct was pursued to enable him to buy without competition, for a trifling amount, all the land of the complainant: *Held*, that an answer was evasive and insufficient, when answering that the defendant "has no *recollection* of. making said statement, nor does he believe that he stated that W. S. would redeem his land," and that he "*believes* the charge that he stated to the bystanders attending that sale that he would do so, to be untrue."

4. It is essential to the validity of tax sales, that they be conducted in conformity with the requirements of the law, and with entire fairness. Perfect freedom from all influences likely to prevent competition in the sale should be strictly exacted.

5. When the objections to a tax deed consist in the want of conformity to the requirements of the statute in the proceedings at the sale or preliminary to it, or in the assessment of the tax, or in any like particulars, they may be urged at law in an action of ejectment. Where, however, the sale is not open to objections of this nature, but is impeached for fraud or unfair practices of officer or purchaser, to the prejudice of the owner, a court of equity is the proper tribunal to afford relief.

APPEAL from the District Court for Western Virginia.

Slater filed a bill in that court to compel one Maxwell to release whatever apparent right he, Maxwell, might have acquired to a large tract of land (19,944 acres) in Virginia, under a sale of the same, made in October, 1845, by the sheriff of Ritchie County, for taxes amounting to $30.03, accrued for 1841-2-3-4, and the deeds executed upon such sale.

The grounds of relief set forth and relied on were—

1. That the sale had been made at a grossly inadequate price; the land having been worth $6000, and the sale having been made to the defendant for $30.03.

2. That, although the land was composed of parts, capable of being sold separately, and any one of which would have more than paid all the taxes claimed, the *whole* had been set up and sold.

3. That there were many persons at the sale, bystanders, desirous of purchasing different parts, but that the defend-

ant stated to them that the owner would redeem them all, and having thus prevented all competition, had the lands knocked down to himself for the paltry sum named.

As to the facts, it appeared to be true that the land had been sold at a price merely nominal, and wholly below its value, and also that the sheriff had sold the whole; but that in selling he had asked, "Who will pay the taxes and damages for the least quantity of acres?" and that getting no bid for a less quantity of acres, he had then sold the whole. The answer positively averred that no bid could be got for a part. It appeared, also, that in 1840, the complainant had sold 7955 acres of the original tract; but notwithstanding this sale, the entire tract was charged in his name on the books of the commissioner of the revenue of the county, with the taxes, and was returned delinquent for their non-payment, and was sold.

The main questions, accordingly, were : Had the defendant stated to the bystanders that the plaintiff would redeem the land from the tax sale with a view of preventing their bidding, and so of having the land knocked down to himself at a very low price; and if so, what was the effect in equity, upon the sale, of these statements of his?

As respected the matter of fact. In reply to a positive charge in the bill, that he had made statements of the sort above mentioned, the defendant in his answer said, "that he has *no recollection* of making said statement, nor does he *believe* that he stated that William Slater would redeem his land;" and that he "*believes* the charge that he stated to the bystanders attending said sale, that William Slater would redeem his land from the purchaser, to be untrue."

The testimony from witnesses was thus :

One Zinn stated, that "he was present when the sheriff was crying the land, and that Maxwell stepped up, and said he knew *the owners,* and *it was not worth while for any person to buy it,* that they would pay the taxes." Being asked, on cross-examination, by the defendant himself, whether he was certain and positive that those words were used, he answered, "*I am.*" And being asked, whether *he, the defendant,* "*might*

*not have alluded to some of the tracts lying in the Slater con-nection?"* his reply was: "The defendant might have al-luded to those tracts, or he might not. *They were crying the Slater land* at the time he stepped up and made the obser-vations."

One J. R. Jones, also at the sale, testified that Mr. Max-well, S. T. Bukey, and Manly Zinn, were present; that Mr. Zinn "appeared like as if he wanted some of the land; that Maxwell said that he knew the men, *and that it was no use for them to bid,* that it would be redeemed"—as the witness understood Mr. Maxwell to mean—"by *the owner of the land."*

In reply to a question, whether any other person would have bid on the Slater land, if the defendant had not made the representations he did, in relation to its being redeemed, Jones said: "It appeared to me that Mr. Bukey and Mr. Zinn were going to bid; *they said they were going to bid on the Slater land."* Mr. Bukey was dead at the time when the evidence was taken.

Among the exhibits filed by the complainant was a cer-tificate from the clerk of the Ritchie County Court, that the defendant was the purchaser at $31.53 of 19,944 acres in Ritchie County, returned delinquent and sold in the name of Slater, for taxes due in October, 1845 (the taxes which had accrued in 1841-2-3-4), amounting to $30.03. And also a certificate, that 9944 acres of land (evidently the same 19,944 which were sold in 1845, or a part thereof) were returned *delinquent in the name of Slater,* for taxes of 1846-7-8-9, amounting to $23.78; that *twenty-five acres* thereof were sold in September, 1850, to satisfy the said taxes; and were bought by *Maxwell* for $24.96. And then followed, under date of 30*th August,* 1852, a receipt from *the defendant* Maxwell to the plaintiff Slater, by the hand of Slater's at-torney, for $30, in redemption "for twenty-five acres of land purchased by me in September, 1850, for taxes, and sold as land belonging to said Slater, by the sheriff of Ritchie County."

There was a general replication to the answer.

The court below dismissed the bill.

*Mr. Frick, for the appellant,* contended that the gross inadequacy of price — $\frac{1}{200}$th part of value — shocked the conscience, and amounted, in itself, to conclusive evidence of fraud;[*] that it was, moreover, plain that the sheriff had made no sufficient effort to get bidders for a part; and that above all, in preventing persons from bidding, as it was plain that he had done — the answer being evasive on this point — Maxwell had violated a rule of the highest obligation on persons attending auction sales,[†] and applicable especially to sales for tax-titles;[‡] that his statements thus operated as a fraud on the sale, which was to be set aside accordingly; and that the case was one especially for relief through equity: made more plainly so by the certificate from the clerk of Ritchie County Court.

*Messrs. G. H. Lee and C. Boggs,* contended:

1. That the inadequacy of the price, in the absence of fraud, was without import. That the purchase was the purchase of a mere chance, and that in such a case values could not enter into consideration.[§]

2. That the allegation of breach of duty by the sheriff in selling the whole instead of part, was denied by the answer, and disproved.

3. That the allegation of what was said by Maxwell was sufficiently denied by him to put the complainant to full proof both under the Virginia statute and according to the rules of equity pleadings; that where a conversation alleged had occurred more than six years before, a denial on recollection or belief is sufficient,[||] even if the objection now set up to the sufficiency of the denial on belief only had

---

[*] Osgood *v.* Franklin, 2 Johnson's Chancery, 22.

[†] Doolin *v.* Ward, 6 Johnson, 194; Jones *v.* Caswell, 3 Johnson's Cases, 29; Phippen *v.* Stickney, 3 Metcalf, 386; Gardiner *v.* Morse, 25 Maine, 140; Brisbane *v.* Adams, 3 Comstock, 130.

[‡] Dudley *v.* Little, 2 Hammond, 504.

[§] Borell *v.* Dann, 2 Hare, 440, 450; Hansford *v.* Barbour, 3 A. K. Marshall, 515.

[||] Code of Virginia [ed. 1860], ch. 171, § 40, p. 713; Hall *v.* Wood, 1 Page, 404; Brooks *v.* Byam, 1 Story, 296; 1 Daniels's Chancery Practice, 254, 257.

not been, as it was here, waived by a general replication. That if true, the allegation was of an immaterial thing; of a mere impression or conjecture. At most it was a *gratuitous dictum* in respect of which Maxwell, who stood in no relation of confidence to Slater, was under no legal obligation to anybody for precise accuracy of statement or certainty of inference or conclusion; and if any one who heard what he said chose to give implicit credence to it, and forbear to bid, it was his own folly or indiscretion; especially as Maxwell, by bidding himself, showed that he knew he might be mistaken about the owners redeeming, and set the example of taking the chance that he might not redeem.*

4. That on the whole, the complainant had no remedy through a court of equity. The injury to the complainant resulted from his own gross laches and neglect of duty as a landholder, in failing to pay his taxes and redeem his land within the time allowed by law.

Mr. Justice FIELD, after stating the case, delivered the opinion of the court, as follows:

The relief sought by the bill in this case is put upon three grounds:

1st. That the sale was made at a grossly inadequate price;

2d. That the entire tract was sold in one body; and—

3d. That competition at the sale was prevented by the fraudulent declaration of the defendant, made to effect that purpose, that the complainant would redeem the land from the purchasers.

The inadequacy of the price given at the sale of land for unpaid taxes thereon, does not constitute a valid objection to the sale. The taxes levied upon property generally bear a very slight proportion to its value, and of necessity the

---

* Phillips *v.* Duke of Buckingham, 1 Vernon. 227; Neville *v.* Wilkinson, 1 Brown's Chancery, 546; Turner *v.* Harvey, Jacob, 178; Vernon *v.* Keys, 12 East, 637; Evans *v.* Bicknell, 6 Vesey, 173; Small *v.* Attwood, 1 Younge, 407, S. C. on appeal, 6 Clarke & Finelly, 292, 295; Trower *v.* Newcome, 3 Meriv. 704; Laidlaw *v.* Organ, 2 Wheat. 178, 195; Davis *v.* Meeker, 5 Johnson, 354.

whole property must be sold, if a sum equivalent to the amount of the taxes is not bid for a portion of the premises.

The sale of the entire tract in one body would have vitiated the proceeding, if bids could have been obtained upon an offer of a part of the property. In this case the answer avers, and the proof shows, that the sheriff offered to sell a part of each tract without receiving a bid, and it was only then that the entire tract was put up and struck off to the defendant.

The case must, therefore, turn upon the last ground, the alleged fraudulent declaration of the defendant at the sale, to prevent competition.

The allegation of the bill is, that at the time the land was offered for sale a great many persons were present with a view to purchase small tracts for farming purposes, but the defendant stated to them that the complainant would redeem his land from the purchasers, and in that way put down all competition, and had the entire property struck off to him for the amount of the taxes; and that this conduct was pursued to enable him to buy without competition, for a trifling amount, all the land of the complainant.

The answer of the defendant to the allegation is evasive and unsatisfactory. It is that he has no recollection of making the statement averred, nor does he believe he did, and that he believes the charge to be untrue. The charge is of conduct which would not readily be forgotten. It is hardly conceivable that a person could acquire so large a domain as 19,944 acres for so trifling a sum as thirty dollars without a distinct recollection of the attendant circumstances. If the property was acquired by unfair means the fact was one within the defendant's own knowledge, and in such cases the general rule of equity pleading is, that the defendant must answer positively and not merely to his remembrance or belief. The distinction which is generally made between recent and remote acts or declarations of the defendant would hardly seem applicable to a case like the present. It is not necessary, however, to attempt to draw any nice distinctions in this particular, for the answer was not

excepted to, and by the general replication the complainant has waived all objections to its sufficiency.* The difference, however, between a positive answer and an answer in the form of the present one, upon belief, is important to be considered with reference to the testimony required to overcome its denials. A clear and positive denial of an allegation of the bill can only be overcome by the testimony of two witnesses to the fact alleged, or by one witness and corroborative circumstances. But if a fact alleged be denied upon belief merely, or be denied equivocally or evasively, it may be sustained by the testimony of a single witness.†

Turning now to the testimony presented by the record, we find that the allegation of the bill is sufficiently established. One witness states that he was present at the sale of the land, and that the defendant " stepped up and said he knew the owners, and it was not worth while for any person to buy it; that they would pay the taxes." Another witness states, that certain parties were present at the sale, and that the defendant said " he knew the men, and it was no use for them to bid, that it (the land) would be redeemed." Some attempt was made to impeach the credibility of one of these witnesses, but it failed. On the other hand, there are some circumstances which tend to establish the truth of their statements. There were several persons present, some of whom were desirous of bidding at the sale—at least they so stated at the time. It is difficult to explain the fact that none of them made a bid on the property, but allowed the immense tract to be sold at a price less than two cents an acre, except upon the idea that they believed that a bid by them would be of no avail, because a redemption from the sale would be made by the owner.

Again, a portion of the property, amounting to 9944 acres, was returned delinquent for the taxes of 1846, 1847, 1848, and 1849, in the name of the complainant. Twenty-five of these acres were sold in September, 1850, for these taxes,

---

* Story's Equity Pleadings, ₴ 877.

† Knickerbacker *v.* Harris, 1 Paige, 211; 3 Greenleaf's Evidence, § 289.

and were bid in by the defendant. In August, 1852, the complainant redeemed the property thus sold, and the receipt given by the defendant for the money paid on the redemption describes the land *as purchased by him in September, 1850, for taxes, and sold as belonging to the complainant.* This transaction is inexplicable except upon the hypothesis that the action of the defendant in bidding in the property in 1845 was taken for the benefit of the complainant, or that the sale then made was so far subject to objection for unfairness that he desired its concealment until, from lapse of time, it should become impossible to impeach it successfully.

Such being the case there is no doubt that relief should be granted the complainant. It is essential to the validity of tax sales, not merely that they should be conducted in conformity with the requirements of the law, but that they should be conducted with entire fairness. Perfect freedom from all influences likely to prevent competition in the sale should be in all such cases strictly exacted. The owner is seldom present, and is generally ignorant of the proceeding until too late to prevent it. The tax usually bears a very slight proportion to the value of the property, and thus a great temptation is presented to parties to exclude competition at the sale, and to prevent the owner from redeeming when the sale is made. The proceeding, therefore, should be closely scrutinized, and whenever it has been characterized by fraud or unfairness should be set aside, or the purchaser be required to hold the title in trust for the owner.

When the objections to a tax deed consist in the want of conformity to the requirements of the statute in the proceedings at the sale or preliminary to it, or in the assessment of the tax, or in any like particulars, they may be urged at law in an action of ejectment, whether the deed be the ground upon which the recovery of the premises is sought by the purchaser, or be relied upon to defeat a recovery by the owner. In some instances equity will interpose in cases of this kind, as where the deed is by statute made evidence of title in the purchaser, or the preliminary proceedings are regular upon their face, and extrinsic evidence is required

to show their invalidity. Where, however, the sale is not open to objections of this nature, but is impeached for fraud or unfair practices of officer or purchaser, to the prejudice of the owner, a court of equity is the proper tribunal to afford relief. Thus in *Dudley* v. *Little*,* equity relieved against a tax sale and deed, where there had been a combination among several persons that one of them should buy in the land to prevent competition.†

It follows from the views expressed, that the complainant is entitled to a release from the defendant of all the right and interest acquired by him under the tax deeds in the property owned by the complainant at the time of the sale. The decree of the court below will therefore be REVERSED, and the cause remanded with directions to enter a decree in accordance with this opinion.

DECREE ACCORDINGLY.

---

* 2 Hammond, 504.

† See also Yancey v. Hopkins, 1 Mumford, 419; Rowland v. Doty, Harrington's Chancery, 3; Bacon v. Conn 1 Smedes & Marshall's do. 348.