## MOORE v. STONE ET AL.

1. **Principal and Agent:** TERMINATION OF AGENCY. Where an agent's employment is limited to a particular transaction, the conclusion of that transaction will terminate the agency by operation of law.

2. ——: ——: RULE APPLIED. A party was employed to negotiate with an agent for the sale of land for the purchase of a certain tract for his principal, and, after an agreement upon the terms of sale, delivered to his principal a contract for a conveyance, and received from him the first payment, whereupon the principal paid the agent for his services: *Held*, that the agency was then terminated.

3. ——: ——: ——. That the deed was subsequently sent to the banking firm of which the former agent was a member, and was by them delivered to the grantee upon final payment for the land, compensation for the service being made by the grantor, did not revive the former agency.

4. ——: TAX SALE: FRAUD. The purchase of the land at a tax sale by the former agent, after the conclusion of his agency, would not be invalidated by the fact of such agency, and his failure to disclose the purchase at the time of the delivery of the deed was not in fraud of the grantee.

*Appeal from Taylor District Court.*

FRIDAY, MARCH 19.

THE plaintiff brought this action to recover the east half of the south-east quarter of section thirty-two, in township sixty-

nine, north of range thirty-five west.     There was a jury trial resulting in a verdict for plaintiff.

On motion of the defendants, a new trial was granted upon the conditions that they should pay all the accrued costs, file an equitable cross-demand asking to redeem the land in controversy, and to cancel the treasurer's tax deed to plaintiff, and pay into court for the use of the plaintiff a sum equal to the whole amount of taxes, interest, costs and penalty included in said tax deed, and the cause to remain upon the equity docket.

Under this order the defendants filed an answer, denying the allegations of plaintiff's petition, alleging that Stone is the absolute owner of the premises; that he acquired the same by purchase from his co-defendant, Scarlett, in 1870; that in the summer of 1868, Scarlett employed plaintiff to purchase the lands in controversy for him; that plaintiff did purchase the lands for him, as his agent, from one Stewart, and received a warranty deed therefor; that before the completion of said purchase, and while the plaintiff was acting as the agent of Scarlett, the plaintiff fraudulently purchased the land for " back taxes," about the 12th of October, 1868, receiving a certificate of purchase from the treasurer, and frandulently concealed such purchase from said defendant, Scarlett; that defendant, Scarlett, depended and relied upon plaintiff that said land so purchased should be clear of incumbrances, and that plaintiff so represented to said Scarlett that the land was all right, when in fact plaintiff was concealing a tax certificate on the land.   The money ordered by the court to be paid into court for the use of the plaintiff was so paid.   The answer prayed for a cancellation of the tax deed, and for general relief.

The cause was tried to the court, and a decree rendered for defendants.   Plaintiff appeals.

*W. W. Morsman,* for appellant.

*W. P. Hepburn, Morledge & McPherrin,* and *L. T. McCoun,* for appellees.

MILLER, CH. J.—The evidence establishes the following state of facts: In the month of June, 1868, Mr. Scarlett applied to the plaintiff, who was then a member of the banking firm of Moore & McIntire, for the purpose of buying the land in controversy, if they had the agency. On being informed by plaintiff that they were not agents for the land, Scarlett said that Horace Everett, of Council Bluffs, was agent for the owner of the land. Plaintiff then examined and found the land in a printed list of lands for sale by Mr. Everett. Mr. Scarlett desired the plaintiff to buy the land for him at five dollars per acre. The plaintiff said he was going to Council Bluffs in a short time, and would see Mr. Everett and try and make the purchase. In a few days after this the plaintiff did see Mr. Everett, and bargained for the land as Scarlett desired him to do. About two weeks after this, Scarlett again called at the banking house of Moore & McIntire, did not find Moore in, but McIntire was there, and informed him that they had obtained the land for him. In a few days thereafter Scarlett called again and paid one-half the purchase money for the land, and received a written contract for a deed upon the payment of the balance. Scarlett then inquired of plaintiff how much he charged for his services? " He said, usually $20, but in this case $10 would do," and Scarlett then paid the same.

The plaintiff resided in Page county where the business was transacted, Scarlett resided, and the land was situated, in Taylor county. Sometime in the month of July, 1869, a Mr. Farrell called at the banking house of Moore & McIntire, and inquired if the deed to Scarlett for the land in controversy had been received by Moore & McIntire. He was told by them that it had not. The deed was afterwards received, being sent by Everett to Moore & McIntire's banking house, to be delivered by them to Scarlett on payment of the balance of the purchase money. On the 27th of August, 1869, Farrell again called, and plaintiff delivered the deed to him on receipt of the money due, which was remitted to Everett. In delivering the deed and receiving the last payment on the land, Moore & McIntire both testify they were acting as agents of Mr. Ever-

ett, whom they charged the usual collection fee of one-half of one per centum.

The evidence farther shows that neither plaintiff nor McIntire had any knowledge, at the time they made the purchase for Scarlett, that there were any tax liens on the land. The firm of Moore & McIntire purchased the land at tax sale in October, 1868, and held the tax certificate at the time of the delivery of the deed to Scarlett, and did not make the fact known to him. In making such tax purchase this tract was not selected and purchased by itself, but was purchased at the same time with other lands as they were offered by the treasurer, regardless of the ownership, and without any inquiry, and paying no attention to the numbers, and at the time of the delivery of the deed to Scarlett, they had no knowledge that they then held a certificate for the purchase of the land at tax sale, except what was common to all persons from the records. They then held certificates of the same kind for from ten to twenty thousand acres, and their attention was not particularly called to this tract, until after the treasurer's deed came into the hands of the plaintiff.

Upon these facts it is quite clear that the agency of the plaintiff, or of Moore & McIntire, for the purchase of the land for Scarlett, terminated at the time they delivered to him the written contract for a conveyance of the land on the receipt of the one-half of the purchase money, and the payment of their fees for the services performed. When this was accomplished Moore & McIntire had done all that they, or the plaintiff, had been employed to do. They had made the purchase as Scarlett had desired them to do, delivered to him the written contract sent to them for Scarlett, received the first payment as per agreement. This completed the services they had undertaken. Scarlett himself so regarded it, for when these things were done he inquired how much they charged him for their services, and on being informed as to the amount he paid the same. They had performed the business for which the agency had been constituted, and, by operation of law, the agency was terminated. See Story on Agency, § 499, and cases cited; 2 Kent's Com.,

1. PRINCIPAL and agent: termination of agency.

*643, and cases cited. This was in July, 1868. The purchase of the land at tax sale by Moore & McIntire was not made until October of that year. At that time they were as free to purchase the same as any other persons. Their agency no longer existed; they had not undertaken to procure a good title for Scarlett, nor to examine the title for him. The land was situated in another county from where plaintiff resided; nothing was said to them about the title, and they might well suppose that Scarlett, since he resided near the land and desired to buy it, had examined or procured some one to examine the records, in the county where the lands were situated.

It is also quite clear that the fact that the deed to Scarlett was sent by Everett to the banking house of Moore & McIntire, for the purpose of being delivered upon payment of the balance of the purchase money, did not operate to revive the prior agency for the purchase of the land. In this transaction Moore & McIntire acted for, and as agents of the grantor in the deed. There is no evidence that Scarlett procured the plaintiff, or his firm, to obtain the deed for him. On the contrary it was sent by Everett to Moore & McIntire for the purpose of collecting the balance of the purchase money then due. They performed that service for Everett, and received their compensation from him.

3. ——: ——: ——.

It is equally clear that the plaintiff was not guilty of any fraud, in failing to disclose the fact of the tax purchase by Moore & McIntire. Their relations were not such as required such disclosure to be made, especially when it is affirmatively shown that they had no actual knowledge that they held the certificate of purchase at the time they delivered the deed to Scarlett.

4. ——: tax sale : fraud

The decree of the court below will be reversed, and a decree entered for plaintiff in this court if he so elects, or the cause will be remanded for a decree to be entered in conformity with this opinion by the District Court.

REVERSED.