110 P.2d 536

## SCUDDER et al. v. HART.
### No. 4585.

Supreme Court of New Mexico.

Feb. 1, 1941.

· Whatley, Garland & Weir, of Las Cruces, for appellants.

John E. Hall, of Carrizozo, for appellee.

BICKLEY, Justice.

This case involves the validity of a tax deed.

■ Drake (who is not a party to this suit) was the owner of· the land involved herein. In order to secure an obligation to Prendergast (appellant), he conveyed said land by warranty deed with an agreement for reconveyance when the debt was paid. Drake and Prendergast will hereafter occasionally be referred to as the owner and mortgagee respectively. In the

fall of 1938, the mortgagee notified the owner that he needed money, and unless the owner could arrange to pay it he would have to sell the property, whereupon the owner interested Scudder, the other appellant, who paid the mortgagee $3,500 for a deed to the property, and Scudder, by arrangement, thereafter became mortgagee successor to Prendergast. From 1935 on the property has been returned for taxation by and in the name of the owner. In the fall of 1938, immediately prior to the transaction whereby Scudder acquired Prendergast's interest in the property, the mortgagee Prendergast inquired at the county treasurer's office regarding taxes against the property, and was informed by the treasurer that there was one tax sale against the property, and other taxes due and owing thereon, whereupon he notified Drake of the situation, and Prendergast supplied Drake with a check signed in blank, with instructions to pay all taxes due on the property. Drake, in company with appellant Scudder, went to the county treasurer's office and conferred with the county treasurer, and informed said treasurer that they wanted to pay all taxes due and owing on the property in question. They were advised by the treasurer that the property had been sold for 1937 taxes, and that 1938 taxes were payable, but that the last half thereof was delinquent, and said treasurer stated that upon the payment of taxes for those two years, all taxes previously assessed or delinquent against the property would be fully paid. Drake, in Scudder's presence, thereupon gave the treasurer Prendergast's check for $31.26, which they believed was in full payment of all outstanding taxes against the property, and they so reported to appellant Prendergast, who thereupon gave his unconditional warranty deed to Scudder. Thereafter, in the fall of 1939, the treasurer discovered that according to the 1936 tax roll, the last half of taxes assessed against the property for that year had not been paid, and that the property had been sold to the state for such unpaid taxes, and the tax sale certificate had been assigned to the appellee, Mrs. Hart. Whereupon the treasurer notified Drake of this sale, and of the existence of said tax sale certificate, and that a deed would be executed on the 12th day of December, 1939, unless the owner of said property redeemed the same prior to that date. Drake testified that he relied upon the information previously given to him that all the taxes had been paid with Prendergast's check, as heretofore related, and gave no adequate heed to the notice, and never informed appellants Prendergast and Scudder, or either of them, of having any notice or knowledge of the changed situation. Prendergast and Scudder, according to the findings of the court, never had any knowledge of the subsequent notice of the treasurer to Drake heretofore referred to, until long after the issuance of the tax deed to Mrs. Hart, the appellee. After learning of said tax deed, this suit was brought by Scudder and Prendergast for the purpose of having the court cancel and set aside said tax deed. During the course of the trial, the learned trial

judge remarked: "This is another one of those complicated tax suits full of points of law. It is hard to decide." The case does indeed present difficulties. We find property, which, according to the testimony, is valued at about $8,000, sold for taxes for an insignificant amount, and perhaps passing into a new ownership as a result of the tax sale. These circumstances, harsh as their result may be, will not aid appellants if the appellee has a valid tax title. Further facts drawn from the findings and from the testimony illuminating such findings, will be referred to in the course of the opinion.

The court found:

"3. That on December 15, 1938 C. A. Prendergast sent L. S. Drake and N. G. Scudder to the County Treasurer of Lincoln County, New Mexico, with instructions for them to pay all taxes previously assessed against the said property and which had not been paid and to redeem the said property from any tax sales theretofore made.

"4. That pursuant to said instructions the said Drake went to the office of the County Treasurer of Lincoln County, New Mexico and asked the said Treasurer for a statement of the amount of all taxes previously assessed against the said property and which had not been paid, and was by the said Treasurer, O. W. Bamberger, advised that taxes assessed against the property for 1938 had not been paid and that the property had been sold on the first Monday in December, 1938 for taxes assessed for the year 1937 and not previously paid, and that upon the redemption of the said property from the said tax sale for 1937 taxes and the payment of the 1938 taxes, all taxes against the said property would be then fully paid to that date."

Appellee's counsel made the following objection to the last quoted findings: "Mr. Hall: The Defendant objects to that part of Plaintiff's Requested Findings of Fact Nos. 3 and 4, to the effect that Drake was sent to the Treasurer's office to pay the taxes—for what really happened there amounted to this, that Prendergast informed Drake that the taxes were unpaid, and that Drake went there with Prendergast's money for the purpose of paying them in his own behalf, and that the money of Prendergast which he used to pay them was money that he had arranged to borrow from Prendergast; that he was acting in his own behalf as the property owner and tax payer while he was in the Treasurer's office December 15, 1938; that his obligation to pay taxes is based on the duty imposed by statute, and not on instructions or request of Prendergast."

The court declined to alter the findings to accord with this objection. The appellee has taken no measures to assail by review the correctness of the foregoing findings. The appellee requested, and the court made the following conclusion of law: "(1) That if the plaintiff C. A. Prendergast, as a principal had any right to notice (then) under the theory of agency the Court finds that the relationship of prin-

80

cipal and agent, between Prendergast and Drake continued to exist up to the time that the redemption period expired, and that notice of the unpaid 1936 tax given to Drake in September, 1939 was notice to and binding upon the plaintiff Prendergast."

The view that Drake was acting on behalf of Prendergast in making tender of the taxes due is thus made manifest.

The trial court, in an opinion filed in the case, concluded as a matter of law:

"That by the conduct of Mr. Drake on December 15, 1938, what he did then amounted to a tender which in Law should be held to be a good tender as to taxes due for the last half 1936, subject, however, to the proposition that when later Drake was advised as aforesaid, as to the fact that the taxes for the last half 1936 had not been paid and that there was an outstanding certificate, and that he should redeem the property, *the said prior tender as to the last half 1936 became of no force and effect,* but that under that situation it was legally incumbent upon Mr. Drake to pay or tender to pay, or offer to redeem as to the delinquency for the last half 1936." (Italics ours.)

The conclusion of the court last quoted, which is reflected further in the more formal findings of fact and conclusions of law, for the purposes of this case only, may be assumed to be correct insofar as the interests of Mr. Drake in the property is concerned, although Mr. Drake's interests are in no respect, as between Drake and appellee, finally adjudicated in this ac-

tion, since he is not a party hereto. The interesting question which arises, and which we shall now consider, is: Assuming that the tax title claimed by the appellee is valid as to Drake, is it valid as to appellants Prendergast and Scudder, who resist the validity of appellee's claim to tax title? In our endeavor to do justice, we will treat the complaint, as amended, in such particulars as are warranted by the record of the trial, and employ such "implements of decision" as may be available.

Section 24 of Chapter 27, S.L. 1934, Sp.Sess., says that: "In all cases where the owner of land sold for taxes shall resist the validity of such tax title, such owner may prove fraud committed by the officer selling the said lands, or in the purchaser, to defeat the same, and, if fraud is established, such title shall be void."

In Cooley on Taxation, 3rd Ed., page 808, it is said: "Tender; Attempted Payment. Tender of the tax by anyone who has a right to make payment is effectual to prevent a sale, whether the tender is accepted or not. (Citing authorities) * * * If the owner of land or the holder of a lien thereon applies in good faith to the proper officer for the purpose of ascertaining the amount of the taxes and of paying the same, and is prevented by such officer's mistake, wrong, or fault, such attempt to pay is generally regarded as equivalent to payment." (Citing more authorities). See Gammill v. Mann, 41 N.M. 552, 72 P.2d 12.

In Gould v. Sullivan, 84 Wis. 659, 54 N. W. 1013, 20 L.R.A. 487, 36 Am.St.Rep. 955, it was held:

"Tax Sales—Statement by Town Treasurer That Nothing Is Due, Effect of.—It is the duty of a town treasurer to furnish taxpayers with information as to the amount of taxes payable upon their lands in the township; and, as they have a right to rely upon that information, they cannot be prejudiced by its incorrectness. Hence if a landowner, through his agent, attempts and offers to pay, in due season, all the taxes due upon his property within a township, and the treasurer erroneously states that there is nothing assessed upon the roll against a certain tract, a tax deed issued upon a subsequent sale of that tract for nonpayment of taxes thereon is void, and its invalidity may be made available in a legal action of ejectment, as well as in an equitable suit for its cancellation.

"Tax Sales—Statute of Limitations, When Not a Bar to Recovery of Land.—The statute of limitations fixing a period within which lands sold for nonpayment of taxes may be redeemed does not apply to a case where all the taxes due upon such lands have been regularly tendered, and the proper amount has not been paid merely because the officer to or through whom such payment could alone be made has negligently made a misstatement as to the sum actually due."

And in the opinion, the court said: " * * * As to all such defects or want of authority to sell and convey, the doctrine of caveat emptor applies, and the purchaser who takes a title depending upon the exercise of special statutory authority cannot be considered a bona fide purchaser without notice. He must see to it, at his peril, that the title he takes is a valid one. Besides, he never pays a full or fair price, but gets, rather, 'acres for cents.' "

The court elsewhere in the opinion said:

"It is plain that the plaintiff, the former owner, had in good faith attempted and offered to pay to the proper town treasurer, in due season, the taxes for which the lands were sold, together with the taxes on his other lands in the same town, and was informed that there were no taxes on the roll against them. The town treasurer whose official duty it was to furnish the information applied for, and who represented the state in the exercise of the taxing power, pro hac vice, was mistaken; and no fault, upon the facts found, can be imputed to the plaintiff. He had a right to regard the information as true, and there is nothing to show that he had any reason to distrust it. There was no occasion for him to consult the sale list, or the notice of redemption of lands sold, and he had no occasion to pursue the matter further. Shall he lose his lands by reason of the tax deed, and for no fault of his own?

"Here is a clear case of mutual mistake, which would certainly be ground for relief in a court of equity, under its original jurisdiction, *in cases of fraud,* accident, and mistake,—a mistake which, if not corrected, *carries with it all the injurious conse-*

*quences of a fraudulent misrepresentation.* Equity has jurisdiction, not only to arrest tax proceedings, but to set aside tax deeds founded on, or resulting from, *fraudulent conduct of taxing officers.* Lefferts v. Board of Supervisors, 21 Wis. 688; Slater v. Maxwell, 6 Wall. 268, 277 [18 L.Ed. 796]." (Italics ours.)

We think our statute last quoted, when it uses the word "fraud", contemplates constructive as well as actual fraud, and does not necessarily imply any actual dishonesty of purpose, nor intent to deceive in the "officer selling said lands". Under the head "Mistake or Fault of Officer", it is said in 61 C.J. 1290, § 1794: "It is the duty of the proper officers to impart correct information to those seeking to redeem from tax sales, and an owner does not lose his right to redeem *by permitting the appointed time to elapse,* or paying less than the proper amount, or otherwise failing to comply with the directions of the statute, when this was caused *by the fraud of a public officer,* or by the latter's inability to furnish necessary information, or by his *mistake, negligence,* or miscalculation, *or by misleading advice given by him;* no act of misconduct by him can prevent the redemption." (Italics ours.)

Again, at Section 1996, of the same text, it is said: "Generally speaking, fraud in the procurement of a tax deed is ground for its cancellation in equity, whether the fraud be actual or *constructive.*"

In 26 C.J., Fraud, § 4, it is said: "Constructive fraud *is a breach of legal* or equitable *duty* which, *irrespective of the moral guilt of the fraud feasor,* the law declares fraudulent because of its tendency to *deceive others,* to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud." (Italics ours.)

In Pace v. Wight, 25 N.M. 276, 181 P. 430, it was suggested that the failure of a treasurer to perform the duties incumbent upon him resulting in prejudice to a taxpayer would lead to manifest injustice and afford ample opportunities for fraud. From all of the foregoing, we conclude that constructive fraud was committed by the treasurer in selling the lands in question for the taxes of the last half of 1936, unless the effect of his constructively fraudulent representations to Drake and his principal Prendergast, and to Scudder had been neutralized and destroyed by the subsequent notice which he gave to Drake to the effect that his former statements, that the payment made by Prendergast through Drake cleared the property of taxes, were erroneous, and that there was, in fact, an outstanding tax sales certificate for the last half of the taxes of 1936, and demanding payment.

■ The next feature of the statute quoted requiring consideration is the use of the word "owner", and whether its use clothes a mortgagee with the protection of this statute. Before going to the decisions and definitions of the word "owner", it is well to note that Sec. 16 of Chap. 27, Laws

of 1934, Sp.Sess., pertaining to notices to be given by the treasurer prior to issuance of a tax deed notice shall be given to the "taxpayer and/or mortgagee (when shown of record) by mailing same," etc. Also Section 4 of the Act provides that the treasurer shall give notice of the sale of the real property for delinquent taxes to the "delinquent taxpayer and/or mortgagee"—when shown of record, etc. This indicates that in the legislative mind, the mortgagee has an interest to be protected, as well as the taxpayer or owner. We again quote from 2 Cooley on Taxation, 1023, in respect to the general rules of construction of statutes extending the right to redeem, the following:

"The statutes which give the right are to be regarded favorably and construed with liberality. Abundant reason for this is assigned in the cases which recognize the rule. It has been justly remarked that the right of the government to sell lands for taxes, as it is accustomed to do, can only be maintained on 'the absolute sovereignty of the state in the exercise of its taxing power.' But it is a severe exercise of power. To divest ownership, without personal notice and without direct compensation, is the instance in which a constitutional government approaches most nearly to an unrestricted tyranny. Whatever tends to modify this right is favorable to the citizen, and ought to be liberally construed, on the principle that remedial statutes are to be beneficially expounded. Redemption is the last chance of the citizen to recover his right of property. Consequently, the right of the party cannot be defeated by any failure of an officer to make the proper record, and sale after a redemption will be a nullity. The owner is not required to redeem from an illegal sale." See Fernandez Co. v. Montoya, 42 N.M. 524, 82 P.2d 289, 118 A.L.R. 573, and cases cited to point 6.

And at page 1043 of the same work, it is said: "The determination of this question may to some extent depend upon the phraseology of the statute. The general rule is that any one may redeem who has in the land an interest which would be affected by the tax conveyance. A statute giving the right to redeem to the 'owner' will be construed to embrace the case of the original owner, notwithstanding there is an outstanding tax title. It may also embrace any one who has a substantial interest in the premises; even a wife having a homestead right in her husband's lands, or a lien creditor, or a purchaser by executory contract. A purchaser at sheriff's sale of the right of one in possession may redeem, though he shows no title in the occupant. And so may a husband who claims in right of his wife; or a dowress; or a mortgagee or his assignee." See also Cox v. Shipe, 44 N.M. 378, 102 P.2d 1115.

The Oklahoma Supreme Court in Blaine County Bank v. Noble, 55 Okl. 361, 155 P. 532, 534, quotes the foregoing language of Mr. Cooley with approval and also adds:

"In Lane v. Wright, 121 Iowa 376, 96 N W. 902, 100 Am.St.Rep. 362, it is said:

" 'The term "owner," as used in determining who may redeem from tax sale, has been construed to include mortgagees, judgment creditors, and holders of contingent interests in the land affected by the sale.' "

If the word "owner" is broad enough to include mortgagee as one having a right to redeem, we see no reason why such mortgagee may not have the protection of the provisions of the salutary statute which seeks to protect against the injurious consequences of fraudulent conduct by the public officer in preventing redemption and selling land for taxes.

█ We are next required to consider the meaning of the word "void" in the phrase, "If fraud is established, such title shall be void." In Kyle v. Chaves, 42 N.M. 21, 74 P.2d 1030, we discussed the meaning of the word "void" at some length, which is summarized in the syllabus as follows: "The word 'void' is not always used in an absolute or in its literal sense but may be and often is used in the sense of 'voidable.' Where an enactment has relation only to the benefit of particular persons, 'void' will be understood as 'voidable' only at the election of the person or persons for whose protection the enactment was made, provided they are capable of protecting themselves. 'Absolutely void' is that which the law or nature of things forbids to be enforced at all, and that is 'relatively void' which the law condemns as a wrong to individuals and refuses to enforce against them."

There are other definitions and judicial expressions which furnish examples and are in harmony with our pronouncement, and more nearly apply to the case at bar. In 67 C.J., "Void", Section 3, it is said: "Things may be 'void' as to some persons and for some purposes, and, as to them, incapable of being otherwise, which are yet valid as to other persons, and effectual for other purposes."

Note 83 to the foregoing text is as follows:

"State v. Richmond, 26 N.H. 232, 237; Boynton Furnace Co. v. Sorensen, 80 Wis. 594, 50 N.W. 773, 774. See Brown v. Brown, 50 N.H. 538, 552 (in a sense differing from that of absolute nullity, 'void' may be used as merely 'void as to some person, or in some particular,' without impeachment of the whole proceeding.').

"(a) *For example,* 'a deed, executed by an idiot, and by others capable of contracting, may be void as to the idiot, and yet binding as to the others. An instrument in form of a deed, but without a seal, may be void as a conveyance, and yet be binding for some other purposes.' State v. Richmond, 26 N.H. 232, 237, 238."

In Brown v. Brown, cited in the note, the court said: "The laying out of this highway is to be regarded as void only as to such as have cause to complain."

Now, if Drake were resisting the validity of appellee's tax title on the ground of the constructive fraud of the officer selling the land arising from his negligence,

mistake, wrong or fault, he (Drake) might be confronted with the contention that, having been guilty of negligence, fault and wrong in failing and refusing to pay the taxes for the last half of 1936, and redeem the certificate of sale for such taxes, after the new demand therefor, he, himself, was estopped from establishing the alleged fraud of the treasurer. No such estoppel, based upon the negligence, mistake, wrong, or fault of the officer, even if it could be successfully urged as against Drake, would apply as to Prendergast and Scudder, since such negligence, mistake, wrong, or fault is continuing as to them until the treasurer gives them notice of his previous mistake and makes demand upon them for payment of such taxes.

Suppose we take Drake as agent of Prendergast, and otherwise, out of the picture for a moment, and suppose Prendergast, with his recorded warranty deed of record, is not a mortgagee "shown of record" within contemplation of the statute (§ 16, Chap. 27, Laws of 1934, Sp. Sess.) requiring notice to the "taxpayer and/or mortgagee", that unless he redeems, a tax deed will be issued; in other words, a mortgagee with an unrecorded mortgage. Now, suppose Prendergast, as such mortgagee, had, in person, instead of through an agent, offered to pay and paid to the county treasurer a sum of money sufficient to pay all of the taxes which the treasurer said were delinquent, and sufficient to redeem from all tax sales that the treasurer informed him about, and the said treasurer had never thereafter notified Prendergast of the discovery of the omitted tax sale and certificate based thereon, or otherwise brought knowledge home to him of such mistake and omission, could said county treasurer, by issuing a tax deed, based upon a sale for delinquent taxes for the period covered by such tender, deprive the mortgagee, Prendergast, of his interest in such property? We think not.

The notice here last alluded to should not be confused with the notice required by statute—one arises from legislative direction—the other from facts, official wrongs and equitable principles.

So, we come to a consideration of the finding and conclusion of the trial court heretofore quoted, and which we repeat for convenience as follows: "(1) That if the plaintiff C. A. Prendergast, as a principal had any right to notice (then) under the theory of agency the Court finds that the relationship of principal and agent, between Prendergast and Drake continued to exist up to the time that the redemption period expired, and that notice of the unpaid 1936 tax given to Drake in September, 1939 was notice to and binding upon the plaintiff Prendergast."

This seems to be, at best, a mixture of finding of fact and conclusion of law. There is no independent finding of fact and no evidence that we discover to support the conclusion that the relationship of principal and agent existing at the time Drake went to the treasurer's office to pay the taxes for Prendergast, continued until September, 1939. If such relationship

of principal and agent continued as aforesaid, we must find it solely in the principles of law governing agency. In 2 C.J., Agency, Sec. 648, it is said: "Unless there is proof either that the agency is a general continuing agency to endure until revoked, or that the agent fills some character from which such a general agency may be presumed, the fact that there has been a separate former agency for a different or even a similar purpose does not raise a presumption of agency as to any subsequent transaction." See also 3 C.J.S., Agency, § 315.

Again, at Section 664, it is said: "In cases of special agency, limited to a particular transaction, the agency is deemed to have ceased at the completion of the transaction, and the burden rests with the one asserting it to prove the continuance of the authority." See also 3 C.J.S., Agency, § 316.

In the same text, at Section 149, is the following: "An agency is of course created by the principal for a purpose, or for the doing of certain specific acts, and when this purpose is fully accomplished, or these acts are done, the agency ipso facto ends, and the authority of the agent to bind the principal by further action thereupon ceases. Thus an agency to find a purchaser for the principal's property terminates as soon as a purchaser is found, and an agency to obtain a loan terminates, at any event, when the money is received by the borrower and all the papers which the transaction calls for are executed and delivered to the respective parties." See also 2 C.J.S., Agency, § 72.

In Hermann v. Niagara F. Ins. Co., 100 N.Y. 411, 3 N.E. 341, 53 Am.Rep. 197, it was held that the authority of an agent employed to procure insurance, who is not a general agent to place and manage insurance of his principal's property, terminates with the procurement of the policy, and hence he has no further power to discharge it.

In Mechem on Agency, 2d Ed., Section 552, it is said: "Where the agency was created for the purpose of performing some specific act or acts, it will be terminated by the accomplishment of the purpose which called it into being. Having fulfilled its mission it is henceforth functus officio."

Furthermore, it is said: "An agency may terminate by operation of law by reason of a change in the condition or status of either of the parties to the relation before the execution of the agency." 2 C.J., Agency, § 175; 2 C.J.S., Agency, § 84.

And Mechem on Agency says at Section 556: "It does not necessarily follow that, because an authority would be terminated by the accomplishment of the object, it must in all cases continue until the object is accomplished. * * * Known changes in conditions or values may be significant and perhaps conclusive. The mere lapse of time may raise a presumption of termination. * * *"

The facts in the case at bar show that the reason that Prendergast sent Drake and Scudder to the county treasurer with instructions for them to pay all taxes previously assessed against the property was that Prendergast refused to carry Drake any longer on his obligation. Whereupon Drake found Scudder, who agreed to buy Prendergast's interest for $3,500, and Scudder and Drake went together to the treasurer's office to clear the title so far as tax liens were concerned before closing the deal. After having received the treasurer's assurance that the taxes against the property would all be paid upon the giving of Prendergast's check for $31.26, Prendergast, the next day, December 16, 1938, conveyed the property to Scudder by warranty deed. The notice which has been referred to was by the treasurer sent to Drake September 4, 1939. These changes in the condition and status of the parties and this lapse of time argue against a continuance of the relationship of agency between Scudder and Prendergast, which apparently came to an end when the three-cornered purpose of the parties was accomplished. Appellee says in her brief: "From and after December 16, 1938, Prendergast had no further legal or equitable interest in the property and no right to redeem." These observations are in answer to the suggestion that the purpose of the agency was not accomplished, albeit through the fault of the treasurer, and hence it was the duty of Drake to notify Prendergast that he had failed to accomplish what he was sent to do.

We are constrained to conclude that the trial court erred in decreeing that the appellee is the owner in fee simple of the property involved, and quieting her title thereto, and in barring appellants from asserting any right, title or interest in and to said property or claiming any lien thereon. It appears to us that the most that the appellee may claim is that she is the owner of the property, subject to such lien or other rights as the appellants may have thereon or therein. It should be understood, however, that nothing herein declared is intended to be a final adjudication as to the rights of L. S. Drake in the property or as to his right to assert the invalidity of the tax deed. Said Drake, not being a party to this action, is not controlled thereby.

The judgment and decree of the district court is reversed and the cause remanded, with directions to take further proceedings not inconsistent with the views herein expressed, and

It is so ordered.

BRICE, C. J., and MABRY, J., concur.

SADLER, Justice (specially concurring).

I agree with the conclusion announced in the opinion of Mr. Justice Bickley that the relationship of agency between the owner, Drake, and the mortgagee, Prendergast, no longer existed when the treasurer notified the former of the mistake later discovered in giving what purported to be a correct statement of the amount nec-

essary to clear the property of delinquent taxes. Drake was delegated by Prendergast to inquire of the treasurer the amount of taxes delinquent on the property and to write said amount in the blank check furnished him by Prendergast and deliver same to the treasurer. This is exactly what Drake did and his agency automatically terminated when he did it. Moore v. Stone, 40 Iowa 259; Bragg v. Bamberger, 23 Ind. 198; People ex rel. Douvielle v. Manistee Supervisors, 40 Mich. 585; Atlanta Savings Bank v. Spencer, 107 Ga. 629, 33 S.E. 878. Notice, later, to Drake concerning the subject matter of the former but completed transaction could not have the effect to revive the agency and thus bind the principal through him, as agent. Moore v. Stone, supra. That Prendergast understood Drake was his agent to do only what actually was done is demonstrated by the fact that he gave Drake only one blank check. The latter of necessity would have to return to his principal for a new grant of authority if any payment were to be made beyond that evidenced by the delivered check. Hence, the notice to Drake was not notice to Prendergast.

I am not content to dispose of the absent owner, Drake, with the mere statement that the effect of the tax deed as between him and Mrs. Hart, its holder, the appellee, is not finally adjudicated herein. The opinion of Mr. Justice Bickley says in substance that the tax deed should not prevail against Prendergast because until notified of the treasurer's mistake and given an opportunity to redeem from the overlooked tax sale certificate, his tender stood as the equivalent of redemption and forestalled the right to sell. This seems to me a correct view. But, by this same process of reasoning, Drake, who did have notice would lose in a contest with Mrs. Hart, holder of the tax deed. Of course, we cannot adjudicate finally Drake's rights here as against the tax deed because we do not have him before us. But we can announce principles here which become stare decisis and when Mr. Drake does come before the court all that remains to be done is to apply them to him. This, it seems to me, is what the opinion by strong implication does. When, for want of notice, it makes impregnable Prendergast's defense against the tax deed, by the same reasoning, unless we explain the inapplicability of such reasoning to Drake who had notice, we render quite vulnerable his defense against the tax title.

It is for this reason that I think the situation calls for an announcement touching the effect of redemption by Scudder, Prendergast's successor in interest. If he is to avoid the tax deed, it is only because until notified and given an opportunity to pay the overlooked taxes, the right to sell did not accrue. Prendergast's tender, made good, would forestall the right to sell. Damon v. Carmean, 44 N.M. 458, 104 P.2d 735. And a redemption by Scudder would inure to Drake's benefit as an inevitable legal consequence even if an undeserved one. Property may not be redeemed piecemeal. It is either wholly

redeemed or not at all. A void tax deed, of itself, confers no rights on anyone. Upon redemption, the state gets the total tax and reconveys the whole title. Everyone interested in the property, deserving it or not, gets the benefit of that redemption.

I concur in the result.

ZINN, J., concurs.